IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THERESA MALONE, individually and as shareholders of and on behalf of Blue Valley Foods, Inc., a Nebraska corporation, LEE PRESTON, individually and as shareholders of and on behalf of Blue Valley Foods, Inc., a Nebraska corporation, JULIE O'NEAL, individually and as shareholders of and on behalf of Blue Valley Foods, Inc., a Nebraska corporation, TERRY MITCHELL, individually and as shareholders of and on behalf of Blue Valley Foods, Inc., a Nebraska corporation, and TERESA WATSON, individually and as shareholders of and on behalf of Blue Valley Foods, Inc., a Nebraska corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 4:12CV3190 |
| v. | ) ) ) | |
| KANTNER INGREDIENTS, INC., KANTNER REAL ESTATE, LLC, KANTNER CUSTOM DAIRY, LLC, CHIANTI CHEESE OF NEW JERSEY, INC., DOUGLAS KANTNER, KANTNER GROUP, INC., CUSTOM DAIRY PRODUCTS, LLC, and KEVIN RUTTER, acting in his official capacity as Director of Blue Valley Foods, Inc., | ) ) ) ) ) ) ) ) ) ) | MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND OTHER PENDING MOTIONS |
| Defendants. | ) ) | |

On or about July 23, 2012, Theresa Malone, Lee Preston, Julie O'Neal, Terry Mitchell and Teresa Watson, individually and on behalf of Blue Valley Foods, Inc. (collectively, the plaintiffs), filed a third amended complaint in the District Court of Thayer County, Nebraska, against Kantner Group, Inc. (Kantner Group); Kantner Ingredients, Inc. (Kantner Ingredients); Chianti Cheese

1

Company of New Jersey, Inc. (Chianti Cheese Company); Kantner Real Estate, LLC (Kantner Real Estate); Kantner Custom Dairy Products, LLC (Kantner Custom Dairy Products); Custom Dairy Products, LLC (Custom Dairy Products); Douglas Kantner (who is sued individually and in his official capacity as director of, and majority shareholder in, Blue Valley Foods, Inc., and in his official capacity as president of Kantner Group, Kantner Ingredients, Chianti Cheese Company, Kantner Real Estate, Kantner Custom Dairy Products, and Custom Dairy Products); Kevin Rutter (individually and in his official capacity as director of Blue Valley Foods, Inc.); International Dairy Ingredients, Inc. (International Dairy Ingredients); Gerber (California), Inc. (Gerber California); and Total Sweeteners, Inc. (Total Sweeteners).   (Notice of Removal, Ex. D, ECF No. 1-1.)   On September 6, 2012, Kantner Ingredients, Chianti Cheese Company, Kantner Real Estate, and Kantner Custom Dairy removed the case to this court, (see generally Notice of Removal, ECF No. 1); thereafter, Douglas Kantner, Kevin Rutter, Kantner Group, International Dairy Ingredients, Gerber California, and Total Sweeteners either joined in or consented to the removal, (see ECF Nos. 3, 9, 12, 13; Notice of Removal ¶ 14, ECF No. 1.)  See also 28 U.S.C. §§ 1441(a), 1446(b)(2).

Custom Dairy Products has not appeared in this action, and several of the other defendants have represented that it has not been served.  (See, e.g., Kantner Ingredients' Br. Supp. Mot. to Dismiss at 3, ECF No. 27.)  On January 7, 2013, the plaintiffs' claims against Total Sweeteners, Gerber California, and International Dairy Ingredients[1] were dismissed. (See Mem. & Order on Pls.' Mots. to Dismiss, ECF No. 52.)  The seven remaining defendants have each filed motions to dismiss the third amended complaint, in whole or in part, for failure to state a claim upon which relief may be granted.  (See ECF Nos. 26, 28, 30, 32 (citing Fed. R. Civ. P. 12(b)(6)).) Kantner Real Estate also argues that the plaintiffs' claims against it must be dismissed for lack of personal jurisdiction.  (See ECF No. 32 (citing Fed. R. Civ. P. 12(b)(2)).)  The plaintiffs have submitted evidence relating to the issue of personal jurisdiction, (see ECF Nos. 40, 46, 47), drawing objections from Kantner Real Estate, (see ECF Nos. 41, 49)  My analysis of these motions follows.

---

[1] Prior to its dismissal from this case, International Dairy Ingredients, Inc., was renamed Ingredia, Inc. (See ECF Nos. 25, 35.)

2

## I.   BACKGROUND

The third amended complaint alleges as follows.  The plaintiffs are residents of the State of Nebraska.  (Notice of Removal, Ex. D, Third Am. Compl. ¶ 1, ECF No. 1-1.)  They are each minority shareholders in Blue Valley Foods, Inc. (Blue Valley Foods), which is located in Hebron, Thayer County, Nebraska.  (Id. ¶¶ 12-13.)  Blue Valley Foods "was a maker of real cheese and cheese substitutes and custom blends."  (Id. ¶ 12.)

Kantner Group, Kantner Ingredients, and Kantner Real Estate are Ohio corporations with their principal places of business in Ohio.  (Id. ¶¶ 4-5, 7.)  Chianti Cheese Company is a New Jersey corporation with its principal place of business in New Jersey.  (Id. ¶ 6.)  Kantner Custom Dairy Products is a Nevada corporation with its principal place of business in Nevada.  (Id. ¶ 8.)  The plaintiffs refer to these entities, collectively, as the "Kantner Companies."  (Id. ¶ 15.)

Douglas Kanter is a resident of the State of California.  (Id. ¶ 2.)  He served as the president and as a director of, and was the majority shareholder in, Blue Valley Foods.  (Id. ¶ 14.)  Douglas Kanter also "is or was, either directly or indirectly, the owner of" the Kantner Companies, and he "was or is . . . responsible for directing the business operations of each of the Kantner Companies."  (Id. ¶¶ 15-16.)

Kevin Rutter is a resident of the State of Ohio.  (Id. ¶ 3.)  He "was an employee of Douglas Kantner . . . who performed work for various Kantner [C]ompanies and for Blue Valley Foods."  (Id. ¶ 17.)  Specifically, he "was at various times" the controller of the Kantner Group, a director of Blue Valley Foods, and the comptroller of Blue Valley Foods.  (Id. ¶ 18.)

The third amended complaint includes six counts.  Count I, titled "Breach of Fiduciary Duty," states that Douglas Kantner and Kevin Rutter owed fiduciary duties to the plaintiffs.  (Id. ¶ 21.)  It states further that Douglas Kantner breached his fiduciary duty to the plaintiffs "by using his dual role as director and majority shareholder of Blue Valley Foods, Inc., and Owner of the Kantner Companies, to the benefit of the Kantner Companies and Defendants Kantner and Rutter personally and to the detriment of Blue Valley Foods, Inc. and the Plaintiffs as minority shareholders."  (Id. ¶ 21(1.).)  More specifically, the plaintiffs allege that Douglas Kantner beached his fiduciary duty to them by engaging in the following "activities":

3

a)      not involving the Plaintiffs in decisions concerning the company or even informing her [sic] of the status of the company or its operations.

b)      failing to hold shareholder meetings[.]

c)      failing to hold elections for the corporation.

d)      failing to provide the Plaintiffs with required financial disclosures[.]

e)      conducting self-dealing transactions on behalf of Blue Valley [Foods], Inc. totalling [sic] millions of dollars with companies that Defendant Kantner owned outright or had an ownership interest in:
    i)      without the consent of or in some cases even the knowledge of the Plaintiffs,
    ii)     while failing to provide any process to insure that those transactions were fair to Blue Valley Foods, Inc. or the minority shareholders of that company[, and]
    iii)    engaging in transactions that were self dealing, and whose sole benefit was for Defendant Kantner and/or other companies that Defendant Kantner had an ownership interest in.

f)      purchasing products on behalf of Blue Valley Foods, Inc. from the Kantner companies and which were inferior quality and/or for which Blue Valley Foods, Inc. was charged exorbitant prices without consulting or obtaining the consent of the Plaintiffs.

g)      selling products on behalf of Blue Valley Foods, Inc. to the Kantner companies and for which Blue Valley Foods, Inc. was paid below market prices without consulting or obtaining the consent of the Plaintiffs.

h)      running Blue Valley Foods, Inc. as a subsidiary of and/or division of The Kantner Group, Inc. without consulting the Plaintiffs or obtaining their consent.

I)      moving key business operations of Blue Valley Foods, Inc. from its headquarters in Hebron, Nebraska to Wapakoneta, Ohio without consulting the Plaintiffs or obtaining their consent.

j)      placing key business operations of Blue Valley Foods, Inc. under the supervision and control of Defendant Kantner, Defendant Rutter and other individuals in the control and employ of Defendant Kantner and or/the Kantner companies without consulting the Plaintiffs or obtaining their consent.

> k)      charging Blue Valley Foods, Inc. for administrative expenses without consulting or obtaining the consent of the Plaintiffs.
>
> l)      cross-collateralizing loans and other financial obligations using Blue Valley Foods, Inc. and its assets as collateral along with the assets of the Kantner companies for loans and lines of credit for the benefit of various Kantner companies and/or Defendants Kantner and Rutter personally and for which the Plaintiffs were neither consulted about nor approved.
>
> m)      satisfying personal obligations of Defendants Kantner and/or Rutter or obligations incurred by various Kantner companies with funds drawn from Blue Valley Foods, Inc. and without consulting or obtaining the approval of the Plaintiffs.
>
> n)      purchasing Custom Dairy Products, LLC, a Nevada company also in the dairy products business, without consulting the Plaintiffs or receiving their approval.
>
> o)      [f]orming and operating Kantner Custom Dairy Products, LLC, a Nevada company also in the dairy products business, without consulting the Plaintiffs or receiving their approval.

(Id. ¶ 26(1.)a-o.)  The plaintiffs add that Kevin Rutter "breached his fiduciary duty as comptroller and a Director of Blue Valley Foods, Inc. by coordinating, participating in and facilitating these actions, independently and/or under the coordination of Defendant Kantner."  (Id. ¶ 22.)

Count II, titled "Conversion," states that "Douglas Kantner converted property belonging to the Plaintiffs by self-dealing, using his dual role as director and majority shareholder of Blue Valley Foods, Inc. and owner of the Kantner [C]ompanies and/or other companies which he owned or had an ownership interest in to benefit himself personally and to the detriment of Blue Valley Foods, Inc. and the Plaintiffs as minority shareholders."  (Id. ¶ 26.)  The plaintiffs then list Douglas Kantner's conversion "activities," which largely parallel the activities listed in paragraph 21(1.), subparagraphs a through m, quoted above.  (Compare id. ¶ 21(1.)a-m with id. ¶ 26a-m.)  In addition, the plaintiffs allege that Douglas Kantner committed conversion by "appropriating the name, logo, recipes, trade secrets and other intellectual property of Blue Valley Foods, Inc. for use in promoting himself, the Kantner [C]ompanies and other companies he owned or had an ownership interest in without informing, obtaining the consent of or providing compensation to the Plaintiffs."  (Id. ¶ 26n.)  The

5

plaintiffs also allege that Kevin Rutter, "as Comptroller and a Director of Blue Valley Foods, Inc. and an employee of the Kantner companies was aware of, participated in and facilitated these actions, independently and/or under the coordination of Defendant Kantner." (Id. ¶ 27.)

In Count III, which is titled "Breach of Duty of Loyalty and Fair Dealing," the plaintiffs allege that "Defendant Douglas Kantner, as majority shareholder and director of Blue Valley Foods, Inc., and Defendant Rutter as Comptroller and Director of Blue Valley Foods, Inc. each owed a duty of loyalty and fair dealing to the Plaintiffs as minority shareholders of Blue Valley Foods, Inc." (Id. ¶ 31.) They add that Douglas Kantner breached his duty of loyalty and fair dealing "by using his dual role as majority shareholder and Director of Blue Valley Foods, Inc. and Owner and President of various Kantner companies in order to benefit various Kantner companies and/or himself personally and to the detriment of Blue Valley Foods, Inc. and the Plaintiffs." (Id. ¶ 32.) The plaintiffs then present a list of specific breaches allegedly committed by Douglas Kantner that nearly parallels the list of activities alleged in paragraph 21(1.), subparagraphs a-m. (Compare id. ¶ 21(1.)a-m with id. ¶ 32a-m.) In addition, the plaintiffs allege that "Kevin Rutter breached his Duty of Loyalty and Fair Dealing as Comptroller and a Director of Blue Valley Foods, Inc. by coordinating, participating in and facilitating these actions, independently and/or under the coordination of Defendant Kantner." (Id. ¶ 33.)

Count IV, which is titled "Civil Conspiracy," states that "Defendants Kantner and Rutter conspired to use their positions as officers and directors of Blue Valley Foods, Inc. to systematically loot Blue Valley Foods, Inc., to the benefit of various companies owned or controlled by Defendant Kantner and Defendants Kantner and Rutter personally and to the detriment of Blue Valley Foods, Inc. and the Plaintiffs." (Id. ¶ 37.) It also states that "Kantner and Rutter acted outside the scope of their authority and other than in the normal course of their corporate duties in forming and executing such a conspiracy." (Id. ¶ 38.) More specifically, the plaintiffs allege that Douglas Kantner and Kevin Rutter "conspired to turn Blue Valley Foods, Inc. from an independent corporation into a subsidiary or division of Kantner Group, Inc."; "moved the accounting and financial operations of Blue Valley Foods, Inc. . . . to Wapakoneta, Ohio, where they were conducted by various employees of The Kantner Group, Inc. under the direction of Defendants Kantner and Rutter"; "moved the accounting and financial record-keeping from the Blue Valley Foods, Inc. computer system to the

6

Kantner Group, Inc. computer system, depriving the Plaintiffs of the ability to access that information"; "managed purchases of raw materials and sales of company products in order to maximize the profits of Kantner Group, Inc.[,] Kantner Ingredients, Inc., Kantner Foods, Inc., Chianti Cheese, Inc. and other Kantner-owned corporations"; "billed administrative fees to Blue Valley Foods, Inc. for work purportedly performed by employees of Kantner-owned corporations," "without informing the Plaintiffs or obtaining their consent"; "cross-collateralized loan(s) and line(s) of credit for Blue Valley Foods, Inc. and Kantner-owned companies for the benefit of those Kantner-owned companies and/or Defendants Kantner and Rutter personally and to the detriment of Blue Valley Foods, Inc. and the Plaintiffs," "without informing the Plaintiffs or obtaining their consent"; and "sent or authorized the sending of funds from accounts owned by Blue Valley Foods, Inc. to the Kantner companies, . . . and/or various other companies in which they had or have been employed or had a financial interest and which payments were for their own personal benefit," "without informing the Plaintiffs or obtaining their consent.  (Id. ¶¶ 39-45.)

Count V is titled "Money Had and Received."  The plaintiffs state that Count V is not directed toward any of the remaining defendants (see, e.g., Pls.' Br. in Opp'n to Kantner Ingredients' Mot. to Dismiss at 9, ECF No. 38); therefore, it has no bearing on the instant motions.

Count VI, which is titled "Usurpation of Corporate Opportunities," states that "Defendant Kantner directly or through one or more of the Kantner [C]ompanies purchased Custom Dairy Products, LLC," and separately "formed Kantner Custom Dairy Products, LLC."  (Notice of Removal, Ex. D, Third Am. Compl.¶¶ 62, 67, ECF No. 1-1.)  Douglas Kantner then "proceeded to operate" those companies without disclosing his activities to the plaintiffs.  (Id. ¶¶ 63-65, 68-70.) According to the plaintiffs, Douglas Kantner's actions deprived Blue Valley Foods of the opportunity to purchase, form, and/or operate these companies.  (Id. ¶¶ 66, 71.)

The plaintiffs "request that they be compensated for the damages that they have suffered as a result of the actions of the Defendants," (id. ¶ 72), and request that "the Defendants be held jointly and severally liable for all damages owed to the Plaintiffs," (id. at 14).  They also seek an order directing Douglas Kantner and Kevin Rutter "to provide a full and complete accounting of all financial records of Blue Valley Foods, Inc., pursuant to Nebraska Revised Statute § 21-2070 et seq." (Id. ¶ 75.)

7

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(2)

To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff must state sufficient facts in the complaint to support a reasonable inference that [the] defendant[] may be subjected to jurisdiction in the forum state." Steinbuch v. Cutler, 518 F.3d 580, 585 (8th Cir. 2008) (citing Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)).  Moreover, after jurisdiction has been controverted by the opposing party, "the plaintiff bears the burden of proving facts supporting personal jurisdiction."  Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008) (citing Dever, 380 F.3d at 1072).  The plaintiff "need[] only make a prima facie showing of jurisdiction" to satisfy this burden.  Id. (citing Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991)).  "The plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto."  Id. (quoting Dever, 380 F.3d at 1072).  When considering these affidavits and exhibits, the court must view the facts in the light most favorable to the plaintiff and resolve all factual conflicts in his favor.  E.g., Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003); Dakota Indus., Inc., 946 F.2d at 1387.

### B.    Rule 12(b)(6)

"Federal Rule of Civil Procedure 8 requires that a complaint present 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557).  Also, although a court must accept as true all factual allegations when analyzing a Rule 12(b)(6) motion, it is not bound to accept as true legal conclusions that have been framed as factual allegations.  See id. ("[T]he tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). See also Cook v. ACS State & Local Solutions, Inc., 663 F.3d 989, 992 (8th Cir. 2011).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets omitted).

## III.   ANALYSIS

### A.   The Plaintiff's Evidence in Opposition to Kantner Real Estate's Rule 12(b)(2) Motion

As I noted above, Kantner Real Estate has moved to dismiss the plaintiffs' claims against it on the ground that personal jurisdiction is lacking.  (See Kantner Real Estate's Mot. to Dismiss, ECF No. 32.)  The plaintiffs have submitted a brief in response to Kantner Real Estate's motion.  (Pls.' Br. in Opp'n to Kantner Real Estate's Mot. to Dismiss, ECF No. 40).  Attached to the plaintiffs' brief is a copy of a document that appears to have been filed in the Superior Court of Maricopa County, Arizona, in Wells Fargo Bank, National Association v. Kantner Ingredients, Inc, No. CV2009-004958.  (See Pls.' Br. in Opp'n to Kantner Real Estate's Mot. to Dismiss at 9, ECF No. 40.)  This document is accompanied by an exhibit titled "Final Report of MCA Financial Group, Ltd."  (Id. at 12.)  The plaintiffs argue that this exhibit "establishes that Defendant Kantner cross-collateralized the assets of Blue Valley Foods and Kantner Real Estate, LLC and then used them as collateral in order to obtain credit from Wells Fargo Bank."  (Id. at 3.)  The plaintiffs add, "The report also serves to establish that the relationship between Blue Valley Foods and Kantner Real Estate, LLC was a far closer one than the Defendant's brief would have this Court believe."  (Id.  See also id. at 3-4.)

9

Kantner Real Estate objected to the plaintiffs' exhibit, arguing that it has not been authenticated by an affidavit, that it lacks foundation, that it constitutes inadmissible hearsay, and that it was not filed in an index of evidence in accordance with this court's local rules.  (See generally Objection to Pls.' Evid., ECF No. 41.)  In response, the plaintiffs filed a "Motion for Leave to File an Affidavit and Index of Evidence Pursuant to [NECivR] 7.0.1(2)," (ECF No. 46), and an index of evidence that includes 1) the documents that were attached to its brief in response to Kantner Real Estate's motion to dismiss, and 2) an affidavit that purports to authenticate these documents while also setting forth arguments in favor of their admissibility, (see ECF Nos. 47, 47-1, and 47-2.  Kantner Real Estate then filed a brief in opposition to the plaintiffs' motion for leave, (ECF No. 48), and a motion to strike the plaintiffs' index of evidence, (ECF No. 49).[2]

Kantner Real Estate's objections to the plaintiffs' evidence are well-taken.  Even if I consider all of the plaintiffs' evidence, however, it is clear that this court lacks personal jurisdiction over Kantner Real Estate.  (See infra Part III.B.)  I shall therefore overrule Kantner Real Estate's "Objection to Plaintiffs' Evidence in Opposition to Motion to Dismiss," (ECF No. 41), and its "Objection to and Motion to Strike Plaintiffs' Index of Evidence," (ECF No. 49), on the ground that the defendant's objections and motion to strike are moot.  I shall grant the plaintiffs' motion for leave, (ECF No. 46), and I have given the plaintiffs' evidence due consideration while analyzing Kantner Real Estate's Rule 12(b)(2) motion.

**B.    Kantner Real Estate's Motion to Dismiss the Third Amended Complaint for Lack of Personal Jurisdiction**

Kantner Real Estate argues that the plaintiffs' claims must be dismissed because Kantner Real Estate's only contact with Nebraska is insufficient to support a finding of personal jurisdiction. (Kantner Real Estate's Br. Supp. Mot. to Dismiss at 6, ECF No. 33.)

"A federal court may exercise jurisdiction 'over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution.'"

---

[2] The plaintiffs also filed a reply brief in support of their motion for leave, a response to Kantner Real Estate's objection, and a response to Kantner Real Estate's motion to strike.  (ECF No. 50).

Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008) (quoting Dakota Indus., Inc. v. Ever Best Ltd., 28 F.3d 910, 915 (8th Cir. 1994)). Nebraska's long-arm statute confers jurisdiction "to the fullest extent permitted by the United States Constitution"; therefore, my analysis need only address whether the exercise of personal jurisdiction over Kantner Real Estate would violate the Due Process Clause.  Stanton v. St. Jude Medical, Inc., 340 F.3d 690, 693 (8th Cir. 2003) (citing Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 612 (8th Cir. 1994)).  See also Wagner v. Unicord Corp., 526 N.W.2d 74, 77-78 (Neb. 1995); Neb. Rev. Stat. § 25-536(2).

Due process requires that a non-resident defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit [in that state] does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  See also Miller, 528 F.3d at 1090; Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004).  "The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction."  Dever, 380 F.3d at 1073.  "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum."  Id. (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)).  "In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state."  Id. (citing Hall, 466 U.S. at 414).  Under either of these two theories, the defendant must have committed "some act by which the defendant purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985).  "This purposeful availment must be sufficient to provide the defendant with fair warning that his activities might result in his being haled into court in that jurisdiction."  Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006).  "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and

substantial justice.'" Burger King Corp., 471 U.S. at 476 (quoting International Shoe Co., 326 U.S. at 320).  See also Dever, 380 F.3d at 1073.

In light of the foregoing principles, the Eighth Circuit "instruct[s] courts to consider the following factors when resolving a personal jurisdiction inquiry: (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties."  Dever, 380 F.3d at 1073-74 (internal quotation marks, brackets, and citation omitted).  See also Sybaritic, Inc. v. Interport Intern., Inc., 957 F.2d 522, 524 (8th Cir. 1992) (explaining that this five-factor framework "incorporates the notions of both 'minimum contacts' and 'fair play and substantial justice'").  The first three factors are given more weight than the remaining factors, but factor three may be inapplicable if jurisdiction is predicated on the theory of general jurisdiction.  Dever, 380 F.3d at 1074.

Kantner Real Estate has submitted evidence showing that it "was formed for the purpose of holding title to commercial real estate"; it "has never conducted business, performed any service, or sold any product in the State of Nebraska"; it "has never owned real property located within the State of Nebraska, or owned, operated, or leased personal property located within the State of Nebraska"; it "has never occupied or conducted business from an office, facility, or other base of operation within the State of Nebraska"; it "has never been registered with the Nebraska Secretary of State and does not have a registered agent within the State of Nebraska"; it "has never solicited business in the State of Nebraska or directed any marketing activity toward the State of Nebraska"; it "has never had an employee, agent, representative, member, manager, officer, or director that resided in the State of Nebraska or who regularly worked on behalf of [Kantner Real Estate] from a location within the State of Nebraska," with the sole exception of legal counsel retained for the purposes of this case; it "has never paid taxes or assessments to any state or local taxing authority in the State of Nebraska"; it "has never maintained an account at any bank or financial institution in the State of Nebraska"; and it "has never commenced any judicial or administrative proceeding in any judicial or administrative forum in the State of Nebraska."  (Kantner Real Estate's Index of Evidence, Ex. 1, Douglas Kantner Dec. ¶¶ 3-4, 9-16, ECF No. 34-1.)  In addition, Kantner Real Estate states that it "has had no business transactions with any company located in Nebraska except a single loan in

12

the amount of $113,310 (at 3.88% interest) that [Kantner Real Estate] made to Blue Valley Foods, Inc. in 2007."  (Id. ¶ 8.)  There is no evidence or allegation that this loan has any connection to the plaintiffs' cause of action.

After considering the nature and quality of Kantner Real Estate's contacts with Nebraska, the quantity of its contacts, and the fact that there is no relation between its single Nebraska contact and the plaintiffs' cause of action, I find that Kantner Real Estate did not purposefully establish minimum contacts with Nebraska (under either the general jurisdiction or specific jurisdiction theory), and the assertion of personal jurisdiction over Kantner Real Estate would not comport with fair play and substantial justice.  Even if Nebraska has an interest in providing a forum for its residents, and even if Nebraska represents a convenient forum for the parties, these considerations are outweighed by the almost complete lack of contact between Kantner Real Estate and this forum.

In opposition to Kantner Real Estate's motion, the plaintiffs argue first that "[d]uring the time period that Defendant [Douglas] Kantner was a director of Blue Valley Foods, he was also the owner and manager of [Kantner Real Estate].  The dealings of those companies, both under the direction and control of Defendant [Douglas] Kantner, are what subject [Kantner Real Estate] to the jurisdiction of this court."  (Pls.' Br. in Opp'n to Kantner Real Estate's Mot. to Dismiss at 2, ECF No. 40.)  Except for the 2007 loan, however, there is no evidence of any "dealings" between Kantner Real Estate and Blue Valley Foods, and there is no evidence of any other connection between Kantner Real Estate and the State of Nebraska.  Nor have the plaintiffs presented evidence that Douglas Kantner was acting as an agent of Kantner Real Estate when he engaged in his own "dealings" with Blue Valley Foods.  Also, the plaintiffs cite no legal authority suggesting that Kantner Real Estate may be haled into court in Nebraska merely because it is owned and managed by a person who allegedly injured them.  In short, the plaintiffs' argument is not supported by evidence or authority, and I find it to be unpersuasive.

The plaintiffs also argue that "the ties between [Kantner Real Estate] and Blue Valley Foods, Inc. are much closer than [Kantner Real Estate] would have this Court believe."  (Pls.' Br. in Opp'n to Kantner Real Estate's Mot. to Dismiss at 2, ECF No. 40.)  In support of this argument, the plaintiffs state that Douglas Kantner "cross-collateralized the assets of [Blue Valley Foods and Kantner Real Estate], together with the other Kantner [C]ompanies, in order to secure loans and lines

13

of credit through Wells Fargo." (Id.)[3]  According to the plaintiffs, this fact is established by the "Final Report of MCA Financial Group, Ltd," which states, "[Wells Fargo's] collateral consisted of all the assets of [Kantner Ingredients], [Blue Valley Foods], Kantner Real Estate, LLC, Chianti Cheese of New Jersey, Inc., and Kantner Custom Dairy Products, LLC." (See id. at 3; see also id. at 12.)  The plaintiffs' argument, as I understand it, is that because the assets of Blue Valley Foods and Kantner Real Estate were listed as collateral on the same loan, the two businesses are intertwined in such a way that this court has personal jurisdiction over Kantner Real Estate.  But I fail to see how this "cross-collateralization" establishes a contact between Kantner Real Estate and Nebraska.  As noted above, the issue at hand is whether Kantner Real Estate purposefully availed itself of the privilege of conducting activities within Nebraska and therefore had fair warning that its activities might result in its being haled into court in Nebraska.  See Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006); Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004).  There is no evidence that Kantner Real Estate applied for the loan.  Furthermore, even if Kantner Real Estate was a loan applicant, there is no evidence that the loan has any connection with the State of Nebraska, except that one of the five companies whose assets were listed as collateral was a Nebraska company.  This incidental connection is not evidence the Kantner Real Estate purposefully availed itself of the privilege of conducting activities within Nebraska.

The plaintiffs argue that "[b]oth the loan in 2007 and the Wells Fargo loans and lines of credit for which Defendant Kantner used the assets of both Blue Valley Foods and [Kantner Real Estate] are sufficient to subject [Kantner Real Estate] to general jurisdiction" because "[t]hose contacts were substantial and continuous."  (Pls.' Br. in Opp'n to Kantner Real Estate's Mot. to Dismiss at 4, ECF No. 40.)  I disagree.  The contacts are not substantial, either singly or in

---

[3] The argument continues, "The Plaintiffs allege that those loans and lines of credit were for the principal benefit of the Kantner [C]ompanies and Defendants Kantner and Rutter personally.  It was Kantner's inability to pay those loans and lines of credit that led to a receivership being established for Blue Valley Foods, under which the assets of the company were sold off and it was put out of business." (Pls.' Br. in Opp'n to Kantner Real Estate's Mot. to Dismiss at 2-3, ECF No. 40.)  The plaintiffs have submitted no evidence in support of these allegations, however.  "[T]he plaintiff[s] bear[] the burden of proving facts supporting personal jurisdiction," Miller v. Nippon Carbon Co., Ltd., 528 F.3d 1087, 1090 (8th Cir. 2008), and unsupported allegations such as these do not help the plaintiffs meet their burden.

combination, and they do not demonstrate that there were continuous contacts between Kantner Real Estate and the State of Nebraska.  Clearly, personal jurisdiction cannot be premised on the "general jurisdiction" theory in this case.

The plaintiffs also argue that Kantner Real Estate, "under the ownership and direction of Defendant Kantner, voluntarily entered into financial arrangements with Blue Valley Foods, a Nebraska corporation." (Pls.' Br. in Opp'n to Kantner Real Estate's Mot. to Dismiss at 4, ECF No. 40.) They add that "those dealings are a key component of this litigation," and therefore "this Court also has a basis for specific jurisdiction." (Id.) As I noted above, there is evidence that Kantner Real Estate loaned money to Blue Valley Foods in 2007, and I considered this contact in my analysis. There is no indication, however, that this loan has any connection with the plaintiffs' cause of action, and therefore it cannot support the exercise of "specific jurisdiction."  Conversely, even if I assume that the Wells Fargo debt is a key component of this litigation, the evidence does not show that the listing of the Kantner Companies' assets as collateral on the loan forged a contact between Kantner Real Estate and the State of Nebraska.  Nor does the "cross-collateralization" establish that Kantner Real Estate "voluntarily entered into [a] financial arrangement[] with Blue Valley Foods." (Id.)  In short, the specific jurisdiction theory does not avail the plaintiffs.

Finally, the plaintiffs argue,

> Defendant Kantner was the owner and manager of [Kantner Real Estate] and the majority shareholder and a Director of Blue Valley Foods.  He first made a loan from [Kantner Real Estate] to Blue Valley Foods in 2007.  Then he proceeded to cross-collateralize the assets of the two companies, together with his other companies, in order to obtain credit from Wells Fargo.  Defendant [Douglas] Kantner made business decisions with respect to the way he handled the business affairs of the two companies and which subject [Kantner Real Estate] to personal jurisdiction in Nebraska with respect to these claims.

(Pls.' Br. in Opp'n to Kantner Real Estate's Mot. to Dismiss at 3-4, ECF No. 40.)  The evidence simply does not support a finding that Kantner Real Estate purposefully established minimum contacts with Nebraska, either on its own or by acting through Douglas Kantner.  Although the defendants do not dispute that this court has personal jurisdiction over Douglas Kantner, I am not persuaded that jurisdiction over Douglas Kantner is sufficient to warrant the extension of this court's jurisdiction over Kantner Real Estate, given the totality of the evidence before me.

15

The plaintiffs have failed to make a prima facie showing that this court has personal jurisdiction over Kantner Real Estate.  Therefore, Kantner Real Estate's motion to dismiss the claims against it pursuant to Rule 12(b)(2) must be granted.[4]

### C.   The Kantner Companies' Motions to Dismiss the Third Amended Complaint Pursuant to Rule 12(b)(6)

Kantner Ingredients, Chianti Cheese Company, Kantner Custom Dairy Products, Kantner Group, and Kantner Real Estate (the Kantner Companies) have moved to dismiss the third amended complaint on the ground that it fails to state a claim against them upon which relief may be granted.  (See ECF Nos. 26, 28, 32.)  Their motions will be granted.

As noted in Part I above, the plaintiffs allege that Douglas Kantner and Kevin Rutter breached their fiduciary duties to the plaintiffs by engaging in a number of specific actions.  (Notice of Removal, Ex. D, Third Am. Compl. ¶¶ 20-24, ECF No. 1-1.)  There are no allegations that any of the Kantner Companies owed a fiduciary duty to the plaintiffs, breached a fiduciary duty to the plaintiffs, or engaged in any of the actions that allegedly amounted to a breach of fiduciary duty.  (See id.)  It is therefore clear that Count I does not state a claim against any of the Kantner Companies.

In Count II, the plaintiffs allege that Douglas Kantner converted property belonging to the plaintiffs by engaging in several specific "activities," and that Kevin Rutter "was aware of, participated in and facilitated these actions, independently and/or under the coordination of Defendant Kantner."  (Notice of Removal, Ex. D, Third Am. Compl. ¶¶ 25-29, ECF No. 1-1.)  The plaintiffs also allege, "The actions of the Defendants altered the condition of the property to the detriment of Blue Valley Foods, Inc. and the exclusion of the Plaintiffs' rights."  (Id. ¶ 29 (emphasis added).)  The only "actions of the Defendants" alleged in Count II, however, are those of Douglas Kantner and Kevin Rutter.  "Tortious conversion is any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights."  Baye v. Airlite Plastics Co., 618 N.W.2d 145, 152 (Neb. 2000) (emphasis added) (citing Zimmerman v. FirsTier

---

[4] For the reasons explained in Part III.C., even if the plaintiffs had met their burden of proving facts supporting personal jurisdiction over Kantner Real Estate, I would grant Kantner Real Estate's motion on the alternate ground that the third amended complaint fails to state a claim against it upon which relief may be granted.

Bank, 585 N.W.2d 445 (Neb. 1998)).  Moreover, "the essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property."  Zimmerman, 585 N.W.2d at 452 (emphasis added) (quoting Terra Western Corp. v. Berry and Co., 295 N.W.2d 693, 696 (Neb. 1980)).  The third amended complaint does not allege that any of the Kantner Companies took action to deprive the plaintiffs of any property, or that they performed "any distinct act of dominion" over the plaintiffs' property; rather, it alleges that Douglas Kantner and Kevin Rutter took actions that harmed Blue Valley Foods and benefitted the Kantner Companies.  In short, because there are no allegations that any of the Kantner Companies committed any act that wrongfully deprived the plaintiffs of their property, I find that Count II fails to state a claim for conversion against the Kantner Companies.

Count III states that Douglas Kantner and Kevin Rutter owed duties of loyalty and fair dealing to the plaintiffs, and it alleges that these defendants breached their duties by engaging in certain specific activities.  (Notice of Removal, Ex. D, Third Am. Compl. ¶¶ 30-35, ECF No. 1-1.) There are no allegations that any of the Kantner Companies owed a duty of loyalty and fair dealing to the plaintiffs, and there are no allegations that any of the Kantner Companies took any action that might constitute a breach of such a duty.  (See id.)  Count III does not state a claim for which relief may be granted against the Kantner Companies.

Count IV alleges that "Defendants Kantner and Rutter conspired to use their positions as officers and directors of Blue Valley Foods, Inc. to systematically loot Blue Valley Foods, Inc., to the benefit of various companies owned or controlled by Defendant Kantner . . . ."  (Notice of Removal, Ex. D, Third Am. Compl. ¶ 37, ECF No. 1-1.)  It also lists other actions allegedly taken by "Kantner and Rutter" that caused harm to the plaintiffs.  (See id. ¶¶ 36-45.)  There are no allegations that any of the Kantner Companies conspired with Douglas Kantner or Kevin Rutter to commit any of the various wrongs listed in Count IV.  (See id.)  See also Hatcher v. Bellevue Volunteer Fire Department, 628 N.W.2d 685, 696 (Neb. 2001) (indicating that to state a cause of action for conspiracy, the pleader must allege the conspiracy, the doing of the wrongful acts, and facts showing damages).  Thus, Count IV does not state a claim for civil conspiracy against the Kantner Companies.

17

In Count VI, which is titled "Usurpation of Corporate Opportunities," the plaintiffs allege that "Defendant Kantner directly or through one or more of the Kantner [C]ompanies purchased Custom Dairy Products, LLC," and, separately, "formed Kantner Custom Dairy Products, LLC." (Notice of Removal, Ex. D, Third Am. Compl. ¶¶ 62, 67, ECF No. 1-1 (emphasis added).) The plaintiffs add that "Defendant Kantner proceeded to operate" Custom Dairy Products and Kantner Custom Dairy products; that "Defendant Kantner did not inform the Plaintiffs that he had purchased or was operating" those two companies; that "Defendant Kantner did not receive the permission of the Plaintiffs to purchase or operate Custom Dairy Products," or "to form or operate Kantner Custom Dairy Products"; and that "Defendant Kantner deprived Blue Valley Foods, Inc. of the opportunity to purchase and/or operate Custom Dairy Products" and "to form and/or operate Kantner Custom Dairy Products." (Id. ¶¶ 63-66, 68-71.)

Insofar as the Kantner Companies are concerned, Count VI merely alleges that Douglas Kantner might have acted "through one or more of the Kantner [C]ompanies" when purchasing Custom Dairy Products and when forming Kantner Custom Dairy Products. In order to prevail on a claim of wrongful usurpation of corporate opportunities, however, a plaintiff must show that "one who occupies a fiduciary relationship to a corporation [has acquired], in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence." Trieweiler v. Sears, 689 N.W.2d 807, 843 (Neb. 2004) (citation omitted) (emphasis added). See also id. ("When there is presented a business opportunity which the corporation is financially able to undertake and which, by its nature, falls into the line of the corporation's business and is of practical advantage to it, or is an opportunity in which the corporation has an actual or expectant interest, a fiduciary is prohibited from permitting his or her self-interest to be brought into conflict with the corporation's interest, and may not take the opportunity for himself or herself." (emphasis added)). There are no allegations that any of the Kantner Companies had a fiduciary relationship to Blue Valley Foods, and the plaintiffs have referred me to no authority suggesting that a claim for usurpation of business opportunities can be maintained in the absence of such allegations. Moreover, Count VI alleges plainly that "Defendant Kantner," not Kevin Rutter or any of the Kantner Companies, deprived Blue Valley Foods of the opportunities to purchase, form, and/or operate Custom Dairy Products and Kantner Custom Dairy

Products.  In short, the plaintiffs' allegations that Douglas Kantner possibly acted through one or more of the Kantner Companies when he purchased or formed other companies is not sufficient to permit a reasonable inference that any of the Kantner Companies is liable for usurping Blue Valley Foods' corporate opportunities.  See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

As I noted previously, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This means that the plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged."  Id.  The third amended complaint does not allege facts that permit a reasonable inference that any of the Kantner Companies are liable to the plaintiffs on any theory of recovery.  Therefore, I must grant the Kantner Companies' motions to dismiss the third amended complaint for failure to state a claim upon which relief may be granted.

In their briefs opposing the Kantner Companies' motions, the plaintiffs recite a number of specific facts that, in their view, support their cause of action against the Kantner Companies.  (See, e.g., Pls.' Br. in Opp'n to Kantner Ingredients' Mot. to Dismiss at 1-9, ECF No. 38.)  These facts are not accompanied by any citations to the third amended complaint, and after careful study, I find that many of the facts recited in the plaintiffs' briefs do not appear anywhere in the operative pleading.  Also, I have not been presented with "matters outside the pleadings" that substantiate these "new" facts.  See Fed. R. Civ. P. 12(d).  I have therefore disregarded all of the facts recited in the plaintiffs' briefs that are inconsistent with the allegations set forth in the third amended complaint.

The plaintiffs argue that the Kantner Group "had a fiduciary duty" to Blue Valley Foods because "Defendants Kantner and Rutter used their authority as Directors of Blue Valley Foods, Inc. to turn the company into a subsidiary or division of The Kantner Group and [into] a sister corporation of the other Kantner [C]ompanies."  (See, e.g., Pls.' Br. in Opp'n to Kantner Ingredients' Mot. to Dismiss at 4, ECF No. 38.)  They add, "This was not a conventional business relationship. It was one where Blue Valley Foods, Inc. was wholly at the mercy of The Kantner Group, under the direction of Defendants Kantner and Rutter.  It was a relationship where the companies shared common ownership and control and Kantner Group purported to act or advise with the interest of

19

Blue Valley Foods in mind."  (Id. (citing Huffman v. Poore, 569 N.W.2d 549, 562 (Neb. Ct. App. 1997)).)

The plaintiffs' argument is based partly on facts that do not appear in the operative complaint. For example, there are no allegations suggesting that Blue Valley Foods was made into "a sister corporation" of any of the Kantner Companies.  In any event, I shall assume for the purposes of argument that the third amended complaint's allegations permit a reasonable inference that the Kantner Group was made the parent corporation of Blue Valley Foods, and that it therefore owed a fiduciary duty and a duty of loyalty and fair dealing to Blue Valley Foods.  The fact remains, however, that there are no allegations in Counts I or III that the Kantner Group took any actions that breached these duties.  Indeed, there are no allegations suggesting that any of the Kantner Companies breached any duty they might have owed to Blue Valley Foods or to the plaintiffs.  All of the alleged breaches are attributed to Douglas Kantner and Kevin Rutter.  (See generally Notice of Removal, Ex. D, Third Am. Compl. ¶¶ 62, 67, ECF No. 1-1.)

I have noted that in Count VI, the plaintiffs allege that "Defendant Kantner directly or through one or more of the Kantner [C]ompanies purchased Custom Dairy Products" and "formed Kantner Custom Dairy Products."  (Notice of Removal, Ex. D, Third Am. Compl. ¶¶ 62, 67, ECF No. 1-1.)  In other words, it is possible that Douglas Kantner acted through one or more of the Kantner Companies when he either purchased Custom Dairy Products or formed Kantner Custom Dairy Products.  Logically, it is also possible that the Kantner Group was one of the companies that Douglas Kantner acted through.  If I assume that the third amended complaint's allegations are sufficient to support an inference that the Kantner Group owed a fiduciary duty to Blue Valley Foods, it follows that the Kantner Group is possibly liable for usurping Blue Valley Foods' corporate opportunities by purchasing Custom Dairy Products and/or forming Kantner Custom Dairy Products. But "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (brackets omitted).  The facts alleged in the third amended complaint do not show that the plaintiffs are entitled to relief against the Kantner Group, or any other Kantner Company, on Count VI.

20

Next, the plaintiffs argue that Count IV states a civil conspiracy claim against the Kantner Companies because they "were the financial beneficiaries of the scheme" and "were also the vehicle through which the looting was carried out."  (See, e.g., Pls.' Br. in Opp'n to Kantner Ingredients' Mot. to Dismiss at 4, ECF No. 38.  See also id. at 8-9.)  The third amended complaint does include factual allegations that permit an inference that Douglas Kantner and Kevin Rutter conspired to "loot" Blue Valley Foods in ways that benefitted the Kantner Companies.  For example, the plaintiffs allege that "Defendants Kantner and Rutter managed purchases of raw materials and sales of company products in order to maximize the profits of [the Kantner Companies] and to benefit Defendants Kantner and Rutter personally."  (Notice of Removal, Ex. D, Third Am. Compl. ¶ 42, ECF No. 1-1.)  They also allege that Defendants Kantner and Rutter authorized transfers of funds from Blue Valley Foods to the Kantner Companies (and others) for their own personal benefit.  (Id. ¶ 44.)  As I noted previously, however, the plaintiffs do not allege that any of the Kantner Companies conspired with Kantner or Rutter to accomplish "the doing of the wrongful acts" described in the operative complaint.  See Hatcher v. Bellevue Volunteer Fire Department, 628 N.W.2d 685, 696 (Neb. 2001) (quoting Dixon v. Reconciliation, Inc., 291 N.W.2d 230, 233 (Neb. 1980)).  In the absence of allegations showing that any of the Kantner Companies reached an agreement or understanding with Kantner or Rutter to inflict injury upon Blue Valley Foods, the third amended complaint simply does not state "civil conspiracy" claim against the Kantner Companies.  See Dixon, 291 N.W.2d at 232-34.

In the third amended complaint and in their briefs, the plaintiffs state consistently that Kantner and Rutter performed a variety of actions that injured Blue Valley Foods.  (See, e.g., Pls.' Br. in Opp'n to Kantner Ingredients' Mot. to Dismiss at 6-8, ECF No. 38 (describing Douglas Kantner's and Kevin Rutter's alleged acts of conversion); Notice of Removal, Ex. D, Third Am. Compl. ¶¶ 25-29, ECF No. 1-1 (same).)  Although there are allegations that the Kantner Companies benefitted from some of Kantner and Rutter's actions, there are no allegations showing that Kantner or Rutter acted as agents of, or conspired with, the Kantner Companies.  Nor are there allegations showing that the Kantner Companies acted directly (as opposed to through Kantner or Rutter) to injure the plaintiffs.  Thus, I conclude that the third amended complaint fails to state a claim upon which relief may be granted against any of the Kantner Companies.

21

**D.   Douglas Kantner's and Kevin Rutter's Motion to Dismiss Parts of the Third Amended Complaint Pursuant to Rule 12(b)(6)**

Citing Federal Rule of Civil Procedure 12(b)(6), Douglas Kantner has moved to dismiss Count II, and Kevin Rutter has moved to dismiss Counts II and VI.  (See ECF No. 30.)[5]  Kevin Rutter's motion will be granted in part.

Kantner and Rutter argue first that the plaintiffs' conversion claim "must be dismissed because it fails to identify any property that could give rise to a claim for conversion under Nebraska law."  (Kantner's & Rutter's Br. Supp. Mot. to Dismiss at 4, ECF No. 31.)  They add that the plaintiffs' allegations "fail to identify any property at all, much less property to which the Plaintiffs had an immediate right to possess."  (Id. at 6.)  In addition, they note that the plaintiffs "allege[] only that the Defendants' actions 'altered the condition' of the property."  (Id.)

"Tortious conversion is any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights."  Baye v. Arilite Plastics Co., 618 N.W.2d 145, 152 (Neb. 2000).  This act of dominion need not necessarily be "a retention of property by the tort-feasor."  Zimmerman v. FirsTier Bank, N.A., 585 N.W.2d 445, 452 (Neb. 1998).  For instance, a person's wrongful transfer of funds to a third party can amount to conversion.  See generally id.  However, "[t]he plaintiff must establish a right to immediate possession of the property at the time of the alleged conversion."  Baye, 618 N.W.2d at 152.  Also, as I have noted previously, "the essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property."  Zimmerman, 585 N.W.2d at 452 (quoting Terra Western Corp. v. Berry and Co., 295 N.W.2d 693, 696 (Neb. 1980)).

In Count II, the plaintiffs allege that a wide range of actions taken by Douglas Kantner and Kevin Rutter amount to conversion.  (See Notice of Removal, Ex. D, Third Am. Compl. ¶¶ 26-27, ECF No. 1-1.)  Among other things, they allege that Douglas Kantner, with assistance from Kevin

---

[5] Kantner and Rutter have also moved to dismiss Count V, (see ECF No. 30), but as I indicated previously, the plaintiffs concede that Count V is not directed toward any of the remaining defendants, (see, e.g., Pls.' Br. in Opp'n to Kantner's & Rutter's Mot. to Dismiss at 5-6, ECF No. 39).

Rutter, "satisf[ied] personal obligations or obligations incurred by the Kanter [C]ompanies and/or other companies owned by Defendant Kantner . . . with funds drawn from Blue Valley Foods, Inc., without the knowledge or consent of the Plaintiffs." (Id. ¶¶ 26(m), 27.) I find that these allegations are sufficient to state a conversion claim against Douglas Kantner and Kevin Rutter.

Kantner and Rutter argue that the plaintiffs failed to identify any property that is capable of being the subject of a conversion claim. (See Kantner's & Rutter's Br. Supp. Mot. to Dismiss at 5-6, ECF No. 31; Kantner's & Rutter's Reply Br. Supp. Mot. to Dismiss at 4, ECF No. 45.) In particular, they submit that business operations or profits are not property that can be converted. (Kantner's & Rutter's Br. Supp. Mot. to Dismiss at 5-6, ECF No. 31 (citing Fun World, Inc. v. Big Red Keno, Ltd., No. A097-967, 1999 WL 79391 (Neb. Ct. App. Feb. 9, 1999).) Although I agree that most of the facts alleged by the plaintiffs cannot support a conversion claim, the plaintiffs have also pleaded facts showing plausibly that Kantner and Rutter converted funds belonging to Blue Valley Foods. Therefore, I am not persuaded that Count II fails to state a claim against Kantner and Rutter.

Kantner and Rutter also observe, accurately, that the third amended complaint alleges that the defendants' actions "altered the condition of the property to the detriment of Blue Valley Foods, Inc. and [to] the exclusion of the Plaintiffs' rights." (Notice of Removal, Ex. D, Third Am. Compl. ¶ 29, ECF No. 1-1. See Kantner's & Rutter's Br. Supp. Mot. to Dismiss at 6, ECF No. 31.) Even so, the plaintiffs have also fairly alleged that Kantner and Rutter wrongfully deprived Blue Valley Foods of its funds. Kantner's and Rutter's motion to dismiss Count II must be denied.

Kevin Rutter has moved to dismiss Count VI, arguing that this count "does not mention Mr. Rutter in any way." (Kantner's & Rutter's Br. Supp. Mot. to Dismiss at 7, ECF No. 31.) I agree. Count VI alleges that Douglas Kantner deprived Blue Valley Foods of certain business opportunities, but it does not state any facts showing plausibly that Kevin Rutter is liable for this misconduct.

In opposition to Rutter's argument, the plaintiffs state, "It defies credulity to think that an individual in Defendant Rutter's position as Controller of The Kantner Group, Inc. was unaware of the facts that Defendant Kantner had purchased and was operating Custom Dairy Products, LLC and then Kantner Custom Dairy Products, LLC on behalf of The Kantner Group. On the contrary, it is far more likely that given his position with the Kantner [C]ompanies, Defendant Rutter was both aware that Defendant Kantner had purchased and was operating those companies and that he was

23

involved in helping him do so." (Pls.' Br. in Opp'n to Kantner's & Rutter's Mot. to Dismiss at 6, ECF No. 39.) As I have explained, however, factual allegations showing that it is possible that Kevin Rutter helped Douglas Kantner usurp Blue Valley Foods' business opportunities are not sufficient to overcome a Rule 12(b)(6) motion. See Iqbal, 556 U.S. at 678-79.

The facts alleged in the third amended complaint simply do not permit a reasonable inference that Rutter usurped any of Blue Valley Foods' business opportunities. Therefore, Rutter's motion to dismiss Count VI will be granted.

**IT IS ORDERED** that:

1.    Kantner Real Estate's "Objection to Plaintiffs' Evidence in Opposition to Motion to Dismiss," (ECF No. 41), and "Objection to and Motion to Strike Plaintiffs' Index of Evidence," (ECF No. 49), are overruled.

2.    The plaintiffs' "Motion for Leave to File an Affidavit and Index of Evidence," (ECF No. 46), is granted.

3.    Kantner Real Estate's motion to dismiss, (ECF No. 32), is granted.

4.    Kantner Ingredients', Chianti Cheese Company's, and Kantner Custom Dairy Products' motion to dismiss, (ECF No. 26), is granted.

5.    Kantner Group's "Amended Motion to Dismiss," (ECF No. 28), is granted.

6.    Douglas Kantner's and Kevin Rutter's "Amended Motion to Dismiss," (ECF No. 30), is granted in part. Specifically, Kevin Rutter's motion to dismiss Count VI is granted, but Douglas Kantner's and Kevin Rutter's motion to dismiss Count II is denied.

7.    Count V of the third amended complaint is dismissed in its entirety.

Dated January 22 , 2013.

                    BY THE COURT

                    _Warren K. Urbom_____
                    Warren K. Urbom
                    United States Senior District Judge

                    24