IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THERESA MALONE, individually and as shareholders of and on behalf of Blue Valley Foods, Inc., a Nebraska corporation; et. al; | **4:12CV3190** |
| Plaintiffs, | |
| vs. | |
| KANTNER INGREDIENTS, INC., KANTNER REAL ESTATE, LLC, KANTNER CUSTOM DAIRY, LLC, CHIANTI CHEESE OF NEW JERSEY, INC., DOUGLAS KANTNER, KANTNER GROUP, INC.,  CUSTOM DAIRY PRODUCTS, LLC, KEVIN RUTTER, acting in his official capacity as Director of Blue Valley Foods, Inc.; | **MEMORANDUM AND ORDER** |
| Defendants. | |

The following motions are currently pending:

- Plaintiffs' Motion to Disqualify Attorney Barry H. Wolinetz, (Filing No. 66);

- Defendants' Motion for Dismissal regarding the Motion to Disqualify, (Filing No. 69) and the amended motion thereof, (Filing No. 70);

- Defendants' Motion to Strike Plaintiffs' Reply Brief in Support of their Motion to Disqualify, (Filing No. 73);

- Plaintiffs' Motions for Leave to File an Amended Complaint, (Filing Nos. 74 and 79);

- Plaintiffs' Motion to Strike Defendants' Expert Disclosure, (Filing No. 84);

- Defendants' Motion to Stay Discovery, (Filing No. 92);

- Plaintiffs' Motion to Compel, (Filing No. 104); and

- Defendants' Objections to Notices of Intent to Serve Subpoenas, (Filing Nos. 108, 109 & 110).

## Table of Contents

BACKGROUND ...................................................................................................... **2**

ANALYSIS ............................................................................................................. **5**

   A.  Motions to Amend.............................................................................................. **5**

      1.  Timeliness .................................................................................................. **5**

      2.  Futility........................................................................................................ **7**

   B.  Motion to Disqualify. ...................................................................................... **12**

      1.  Conflict of Interest ................................................................................... **15**

      2.  Wolinetz as a Witness ............................................................................. **18**

   C.  Discovery Matters ........................................................................................... **19**

      1.  Motion to Strike Defendants' Expert Identification ............................... **19**

      2.  Motion to Compel .................................................................................... **20**

      3.  Motion to Stay and Objections to Subpoenas......................................... **21**

## BACKGROUND

Defendant Douglas Kanter is a Director and majority shareholder of Blue Valley Foods, Inc.  Defendant Kevin Rutter is a Director and comptroller of Blue Valley Foods. The plaintiffs are minority shareholders of Blue Valley Foods.  Blue Valley Foods made cheese, cheese substitutes, and custom blends.  (Filing No. 1-1, at CM/ECF p. 15, ¶12,).

This case was filed in the District Court of Thayer County, Nebraska on May 20, 2011.  The original complaint, and its amendments filed in state court, assert that defendants Kanter and Rutter, as directors of Blue Valley Foods, breached their fiduciary duty to the plaintiffs in the management and operation of Blue Valley Foods.

Specifically, the plaintiffs allege Kanter used "his dual role as director and majority shareholder of Blue Valley Foods" to benefit himself and Rutter personally and to benefit a number of Kanter's other businesses.   (Filing No. 1-1, at CM/ECF p. 16, ¶21).   The complaint also contains allegations of conversion, breach of duty of loyalty and fair dealing, civil conspiracy and usurpation of corporate opportunities.

The action was removed to this court on September 6, 2012. (Filing No. 1). Defendants filed a Motion to Dismiss a portion of Plaintiffs' claims.   That motion was granted in part and denied in part by the Honorable Warren K. Urbom.  (Filing No. 53).

Adopting the proposed dates outlined in the parties' Rule 26(f) Report, the court entered a final progression order on March 11, 2013.  Under the terms of that order, the deadline for moving to amend pleadings was June 4, 2013, and the deadline for identifying expert witnesses expected to testify at the trial was June 28, 2013, with complete expert disclosures due on February 28, 2014.  (Filing No. 60).

On May 16, 2013, the plaintiffs filed a motion to disqualify Defendants' attorney, Barry H. Wolinetz.  (Filing No. 66).  In support of the motion, Defendants submitted docket sheets from two separate actions that were litigated in Ohio.  Wolinetz was listed as Blue Valley Foods' counsel in the Ohio lawsuits, one of which was pending in the Ohio court when this action was initiated in Thayer County, Nebraska.  There is nothing of record indicating that either of the Ohio lawsuits arose from all or part of the facts underlying this case, or that attorney-client confidences gleaned during Wolinetz' representation in the Ohio cases will be relevant or useful in this case.

Plaintiffs identified an expert on June 20, 2013 to testify concerning:

[T]he business valuations of Blue Valley Foods, Inc. at various points in time, the self-dealing nature of the transactions orchestrated by Defendants Kantner and Rutter involving Blue Valley Foods, Inc., the duties owed to

Blue Valley Foods, Inc. by Defendants Kantner and Rutter as Directors of the corporation, that Defendants Kantner and Rutter breached their duties as Directors and the damages to the corporation and the shareholders that resulted.

(Filing No. 76).

The plaintiffs moved to amend their complaint for a fourth time on June 12, 2013, and filed a notice to withdraw that motion on June 24, 2013. (Filing No. 77). They filed another motion to amend the complaint on July 10, 2013, primarily to add a legal malpractice claim against Wolinetz and to comply with the Federal Rules of Civil Procedure for bringing a derivative action on behalf of a corporation. (Filing No. 79).

On July 29, 2013, Defendants identified a "rebuttal" expert to respond to the opinions of plaintiffs' expert. (Filing No. 81). The plaintiffs moved to strike Defendants' expert identification as untimely. (Filing No. 84).

The defendants moved to stay discovery on September 9, 2013, stating they needed rulings on the motions to amend and the motions for disqualification before engaging in discovery. (Filing No. 92). The plaintiffs moved to compel responses to document production requests on September 24, 2013. (Filing No. 104). On September 27, 2013, the defendants filed notices objecting to subpoenas Plaintiffs intended to serve on three separate banks. (Filing Nos. 108, 109 & 110).

This memorandum and order will rule on each of the parties' pending motions and objections. For the reasons stated below, Plaintiffs' motions for leave to file an amended complaint will be denied; Plaintiffs' motions to disqualify Wolinetz will be denied at this time; Plaintiffs' motions compel and to strike Defendants' expert disclosure will be denied; Defendants' motion to stay will be denied, and Defendants' objections to Plaintiffs' subpoena notices will be overruled.

ANALYSIS

A.     Motions to Amend.

The plaintiffs have moved to amend their complaint to add Wolinetz as a party and allege a legal malpractice claim against him.  If the moving party's submissions and arguments support good cause to amend, courts are generally encouraged to allow amendments liberally.  See, e.g., Shen v. Leo A. Daly Co., 222 F.3d 472, 478 (8th Cir. 2000).  However, the right to amend a complaint is not without limits.  The Eighth Circuit has discussed the circumstances under which an amendment should be denied:

> [A] district court can refuse to grant leave to amend a pleading only where it will result in undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment.

Dennis v. Dillard Dept. Stores, Inc., 207 F.3d 523, 525 (8th Cir. 2000)(internal citations omitted); see also, K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 899 (8th Cir. 2002)(noting futility constitutes a valid reason for denial of leave to amend).

The defendants assert the plaintiffs' motion to amend must be denied as both untimely and futile.

1.     Timeliness.

By court order, the deadline for moving to amend pleadings was June 4, 2013. Plaintiffs' motions to amend their complaint were filed on June 12, 2013 and July 10, 2013.  Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, once the time for pleading as a matter of course has expired, amendments to pleadings are allowed only with the written permission of the opposing party or leave of the court.

Pursuant to Rule 16(b)(4), a case management order setting progression deadlines "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The movant's level of diligence and the degree of prejudice to the parties are both factors to consider when assessing if good cause warrants extending a case management deadline, with the movant's diligence being the first consideration and the extent of prejudice to either party considered only following a requisite threshold finding of due diligence. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008); Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006).

Since the plaintiffs moved to amend the complaint after the deadline set in the court's progression order, they must show "good cause" exists for permitting the untimely amendment.[1] See Sherman, 532 F.3d at 716. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006).

The plaintiffs explain that new information "came to light as part of a review of the corporate emails from the Kanter Group" after the deadline for moving to amend had passed. (Filing No. 79, at CM/ECF p. 2). Plaintiffs further assert that their efforts to procure the information that led to their motion to amend were delayed because some of the email files received in discovery were "corrupt" and "[i]t took Plaintiffs' counsel a great deal of time and effort to access even a portion of Defendant Kanter's email file." Id. Defendants have not contradicted this argument or alleged Plaintiffs do not have just cause for their delay in amending their complaint. Accordingly, the court finds Plaintiffs have met the threshold showing that just cause exists for amending their complaint out of time.

---

[1] The initial motion to amend was filed on June 12, 2013, and withdrawn on June 24, 2103. An amended motion to amend was filed on July 10, 2013, (Filing No. 79).

2.      Futility.

Defendants argue the plaintiffs' motion to amend must be denied because allowing the plaintiffs to add Wolinetz as a defendant and to assert a legal malpractice action against him in this forum would be futile.[2]  Specifically, Defendants allege this court has no personal jurisdiction over Wolinetz and, if the amended complaint is permitted, the claims against him would ultimately be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

A motion to amend should be denied as futile "where the proposed amendment would not cure the defect the party sought to correct." Asbury Square, L.L.C. v. Amoco Oil Co., 218 F.R.D. 183, 195 (S.D. Iowa 2003); see also Mississippi River Revival, Inc. v. City of Minneapolis, 319 F.3d 1013, 1018 (8th Cir. 2003); K-tel, Int'l, Inc., 300 F.3d at 899; Wiles v. Capitol Indemnity Corp., 280 F.3d 868, 871 (8th Cir. 2002); Ingrim v. State Farm Fire & Cas. Co., 249 F.3d 743, 745-46 (8th Cir. 2001).   That is, "a court may deny a motion for leave to amend for futility if the proposed amendments would not save the party's claim from dismissal." Asbury Square, L.L.C., 218 F.R.D. at 195 (citing Mississippi River Revival, Inc., 319 F.3d at 1018).

The defendants claim that as to the allegations raised in the plaintiffs' proposed legal malpractice action against Wolinetz, this court lacks personal jurisdiction..   To establish personal jurisdiction to survive a motion to dismiss, the plaintiffs "must state sufficient facts in the complaint to support a reasonable inference" that Wolinetz can be subjected to the jurisdiction of a Nebraska court.  Denver v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)(quoting Block Indus. v. DHJ Indus., Inc., 495 F.2d 256,

---

[2] Defendants make no argument regarding the propriety of the other proposed amendments, the most significant of which is an express inclusion of a derivative claim intending to bring the complaint in compliance with Fed. R. Civ. P. 23.1.

7

259 (8th Cir. 1974)).  If jurisdiction is controverted or denied, the plaintiffs have the burden of proving the court has personal jurisdiction over the defendant.  Id.

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted  by the long-arm statute of the forum state and by the Due Process Clause."  Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991).  Since Nebraska's long-arm statute grants personal jurisdiction to the fullest extent permitted by the Constitution, (Oriental Trading, Co., Inc. v. Firetti, 236 F.3d 938, 943 (8th Cir. 2001)), the issue before the court is whether a grant of personal jurisdiction in this case would comply with the Due Process Clause.  Id.

Due process requires that a defendant have sufficient minimum contacts with the forum state so that "traditional notions of fair play and substantial justice" are not offended.   International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).   The minimum contacts requirement can be fulfilled in two ways: (1) general jurisdiction or (2) specific jurisdiction.  Dever, 380 F.3d at 1073.

> Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).  In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state. Id. at 414, 104 S.Ct. 1868.

Dever, 380 F.3d at 1073.  In assessing whether personal jurisdiction exists, the court considers the following factors: "(1) the nature and quality of [a defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties."  Dever, 380 F.3d 1070 at 1073-74

(quoting Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)).

Plaintiffs' proposed Fourth Amended Complaint asserts Wolinetz "is a resident of and an attorney in Columbus, Ohio, who served as attorney for Blue Valley Foods, Inc., Defendant Douglas Kantner, and the Kantner Companies on multiple occasions from at least 2009 to the present."  (Filing No. 79-1, at CM/ECF p. 2, ¶ 16).  These allegations fall far short of showing that Wolinetz, an Ohio citizen licensed to practice law in Ohio but not Nebraska, has any continuous or systemic contacts with Nebraska.  This court lacks general personal jurisdiction over Wolinetz.

As to specific personal jurisdiction, Count IX of the proposed Fourth Amended Complaint asserts a legal malpractice claim against Wolinetz, alleging Wolinetz previously represented Blue Valley Foods and breached his fiduciary duty to Blue Valley Foods and its minority shareholders – i.e. the plaintiffs in this case.  The proposed amended complaint alleges Wolinetz:

a)   facilitated and assisted in setting off the debts of Douglas Kantner and/or the Kantner Companies with debts owed to Blue Valley Foods, Inc.;

b)   failed to protect Blue Valley Foods' interests in litigation by settling lawsuits and business disputes involving Douglas Kantner, the Kantner companies, and Blue Valley Foods on terms favorable to Kantner and the Kantner companies but detrimental to Blue Valley Foods;

c)   failed to protect the financial interests of Blue Valley Foods against the actions of Defendants Rutter and Kantner to the detriment of Blue Valley Foods, Inc.;

d)      failed to provide Plaintiffs with information about the dealings of Defendants Rutter and Kantner to the detriment of Blue Valley Foods, Inc.;

e)      facilitated transactions for Blue Valley Foods, Inc. which benefited only Defendant Kantner and/or other companies in which Defendant Kantner had an ownership interest;

f)      facilitated the purchase of Custom Dairy Products, LLC, a Nevada company also in the dairy products business, to compete with Blue Valley Foods, without consulting Plaintiffs or receiving their approval; and

g)      formed and represented Kantner Custom Dairy Products, LLC, a Nevada company and dairy products competitor of Blue Valley Foods, without consulting Plaintiffs or receiving their approval.

See Filing No. 79-1, at CM/ECF p. 18-19.

At the outset, it is important to note that the plaintiffs' proposed allegations against Wolinetz do not arise from his appearance and actions in the above-captioned litigation. Rather, the allegations in the proposed amended complaint all relate to Wolinetz' representation of Blue Valley in past transactions and matters that apparently arose and occurred outside Nebraska. There is nothing of record indicating Wolinetz was in Nebraska or had contacts with Nebraska when he allegedly committed malpractice by improperly settling debts, lawsuits, or disputes as the attorney for Blue Valley, facilitated transactions as legal counsel for Blue Valley, or provided representation for the formation and purchase of a dairy products business that competes with Blue Valley.

Wolinetz' contacts with Nebraska in this lawsuit cannot confer upon this forum personal jurisdiction over Wolinetz for alleged prior acts and omissions of malpractice occurring outside Nebraska. See, e.g., Austad Co. v. Pennie & Edmonds, 823 F.2d 223 (8th Cir. 1987). In Austad, the Court found the South Dakota courts did not have

personal jurisdiction over a New York law firm that represented a South Dakota business in Maryland patent litigation.  The New York law firm's only contacts with South Dakota included sending an associate to South Dakota for two days to review records, phone calls to South Dakota, mailings to South Dakota, and the use of a South Dakota courier service.  The actual trial representation of the South Dakota client occurred in Maryland. Austad held that the law form's contacts with South Dakota during the Maryland litigation were insufficient to confer personal jurisdiction over the New York firm in a South Dakota forum because the law firm's only "substantial connection" with South Dakota was "its representation of a South Dakota corporation in connection with litigation taking place wholly outside South Dakota."  Id. at 226-27.  See also, Sawtelle v. Farrell, 70 F.3d 1381, 1390 (1st Cir. 1995) ("The mere existence of an attorney-client relationship, unaccompanied by other sufficient contacts with the forum, does not confer personal jurisdiction over the non-resident in the forum state."); Trinity Industries, Inc. v. Myers & Associates, Ltd., 41 F.3d 229, 230 (5th Cir. 1995)("The bare existence of an attorney-client relationship is not sufficient" to establish the requisite minimum contacts.").

Based upon the arguments and evidence before court, Wolinetz' communications while representing Blue Valley occurred outside of Nebraska and through Kantner – a resident of California.  The plaintiffs' complaint does not allege, and the plaintiffs have not shown, that Wolinetz was in Nebraska or otherwise communicated with the Nebraska minority shareholders regarding Blue Valley's representation during the incidents alleged in the proposed malpractice action.  Although the plaintiffs argue that Wolinetz has contacts with Nebraska – his personal appearance in Thayer County for this case and his continued defense of this action—the "injury giving rise to" the plaintiffs' proposed malpractice lawsuit did not occur within and is not sufficiently connected to Nebraska such that this court has personal jurisdiction over Wolinetz as to that claim.  Dever, 380 F.3d at 1073.  Absent a showing of continuous or systemic contact with a state, an

attorney's appearance in one state does confer upon that state personal jurisdiction over that attorney for alleged malpractice occurring in another state.  See Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999) ("When a lawyer chooses to represent a client in another forum, that in itself does not confer personal jurisdiction if the claim does not arise from the lawyer's contacts with the forum."); Sea Marsh Grp., Inc. v. SC Ventures, Inc., 111 F.3d 129 (4th Cir. 1997)("An attorney's entry of a court appearance pro hac vice in the forum state, without more, is not a substantial enough contact to permit that court to exercise jurisdiction over his person."); Wolk v. Teledyne Industries, Inc., 475 F. Supp. 2d 491, 502 (E.D. Pa 2007).

Wolinetz' contacts with Nebraska were not and are not systematic and continuous, and a Nebraska forum cannot exercise general personal jurisdiction over him.  And as to the plaintiffs' proposed malpractice claim, there is no allegation or evidence that Nebraska can exercise specific personal jurisdiction over Wolinetz where, based on the allegations and evidence of record, Wolinetz' alleged malpractice of assisting Kantner's misuse of Blue Valley corporate assets occurred outside Nebraska.

This court lacks personal jurisdiction over Wolinetz for the claims raised in the plaintiffs' proposed malpractice action.  Allowing the plaintiffs' proposed amendment to add a claim for legal malpractice against Wolinetz would be futile.[3]  That portion of the plaintiffs' motion to amend will therefore be denied.

B.      Motion to Disqualify.

Having concluded Wolinetz will not be added as a party to this case, the court must now address whether he can represent the defendants.  "A party's right to select its

---

[3] The court offers no opinion on the merits of Plaintiffs' proposed claims against Wolinetz.

own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." Macheca Transport Co. v. Philadelphia Indemnity Ins. Co., 463 F.3d 827, 833 (8th Cir. 2006)(internal quotation and citation omitted). The moving party bears the burden on a motion to disqualify an attorney. Turner v. AIG Domestic Claims, Inc., 823 F. Supp. 2d 899, 905 (D. Neb. 2011). "Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny." Harker v. Comm'r, 82 F.3d 806, 808 (8th Cir. 1996)(internal quotations omitted). "When it comes to disqualifying counsel at the pretrial stage, the Court of Appeals takes a very dim view of such a ruling." Turner, 823 F. Supp. 2d at 905 (citing Droste v. Julien, 477 F.3d 1030, 1035 (8th Cir. 2007)).

When considering whether an attorney should be disqualified from representing a party, the court may consider the ABA Code or Rules of professional conduct, any rules of professional conduct adopted by the district court, the court's duty to maintain public confidence, and the court's duty to insure the integrity of judicial proceedings. See United States v. Agosto, 675 F.2d 965, 969 (8th Cir. 1982). "In cases where counsel is in violation of professional ethics, the court may act on motion of an aggrieved party . . . to disqualify." O'Conner v. Jones, 946 F.2d 1395, 1399 (8th Cir. 1991).

Attorneys in this forum "must refrain from conduct unbecoming of a member of the bar." NEGenR 1.7(b). The Nebraska federal court has not adopted, but does consider other codes of professional responsibility or ethics when deciding whether a lawyer has engaged in conduct unbecoming a member of the bar. NEGenR 1.7(b). When analyzing motions to disqualify, this court refers to the Nebraska Rules of Professional conduct. As applied to the issues currently pending before this court:

Neb. R. Prof. Conduct § 3-501.7 provides:

(a) . . . [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Neb. R. Prof. Conduct § 3-501.9 provides:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Neb. R. Prof. Conduct § 3-501.13 provides:

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

. . .

(g) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions [section 3-501.7] the organization's consent to the dual representation is required by [section 3-501.7], the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

Nebraska Rules of Professional Conduct § 3-503.7 provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

> (1) the testimony relates to an uncontested issue;

14

    (2)    the testimony relates to the nature and value of legal services rendered in the case; or

    (3)    disqualification of the lawyer would work substantial hardship on the client.

Based on the foregoing ethical rules and related arguments, Plaintiffs claim Wolinetz is disqualified because he previously represented Blue Valley in court actions occurring in Ohio and therefore has a conflict of interest in providing representation in this case, and because he will likely be a witness in this action.

1.    Conflict of Interest.

Plaintiffs claim Wolintez cannot represent Kantner in this lawsuit because he previously represented Blue Valley in Ohio actions and transactions that are at issue in this case, and he thereby formed an attorney-client relationship with the Plaintiffs in their individual capacities as the minority shareholders of Blue Valley. To determine whether Wolinetz has an actual conflict of interest, the court must determine whether the named plaintiffs are, or ever were, Wolinetz' clients.

Generally, when an attorney represents a corporation, the corporation itself is the attorney's client, not the individual shareholders or the owners of the corporation. The attorney-client relationship between counsel and the corporation, and the duties arising therefrom, do not encompass or extend to the individual shareholders. See, e.g, Restatement (Second) of Law Governing Lawyers § 96 (2000) cmt. b.; Neb. R. Prof. Conduct § 3-501.13(a).

However, under certain circumstances, an attorney who represents a closely held corporation may be deemed to have developed an attorney-client relationship with the

15

individuals owners of the corporation.  For instance, in Detter v. Schreiber, 259 Neb. 381, 610 N.W.2d 13 (2000), the parties were shareholders of a closely held corporation and were litigating a dispute over two promissory notes executed in connection with the formation of the corporation.  One of the shareholders attempted to retain the attorney who drafted the shareholders' agreement; the other moved to disqualify the attorney.  The district court granted the motion to disqualify.  On appeal, the Nebraska Court reviewed the evidence and concluded "it could reasonably be inferred that [the attorney] had knowledge of the two promissory notes executed by the parties and of the management duties which [were] the subject of the counterclaim."  Detter, 259 Neb. at 389, 610 N.W.2d at 18.  Further, the Court noted that the party seeking disqualification "believed that [the attorney] was representing him" personally when the corporation was formed. Id.  Thus, the Court found "no clear error" in the district court's fact-based determination that the attorney's work in the formation of the corporation created a conflict of interest which disqualified the attorney from representing one shareholder against the other. Detter, 259 Neb. at 390, 610 N.W.2d at 18.   See also, Manion v. Nagin, 394 F.3d 1062, 1069 (8th Cir. 2005) (finding under Florida and Minnesota law that an attorney represented both the corporation and the founder/employee where the owner sought and received advice on maintaining control of the corporation and where the attorney drafted the employment agreement favorable to the owner).

Unlike the facts in Detter or Manion, there is no evidence of any relationship between Wolinetz and the plaintiffs – and certainly not a close relationship such that plaintiffs believed Wolinetz represented them personally in the past or that Wolinetz might be aware of confidential information provided by the plaintiffs and pertinent to this case.  By their own admissions, Plaintiffs were not aware Wolinetz had performed previous services for Blue Valley until they received responses to discovery. The evidence of record establishes Wolinetz represented Blue Valley in matters unrelated to the above-captioned litigation and during the course of that prior representation, did not

16

obtain confidential information from the plaintiffs – an important factor in determining whether disqualification is appropriate. See Gifford v. Target Corp., 723 F. Supp. 2d 1110, 1117 (D. Minn. 2010)("Disqualification is not warranted where an attorney's conduct is not likely to have elicited privileged information.").   Under such circumstances, the court cannot find Wolinetz' representation of Blue Valley created a confidential attorney-client relationship with the minority shareholder Plaintiffs. Wolinetz is not disqualified due to any conflict of interest in representing Kantner against the plaintiffs in their individual capacities.

Plaintiffs are also asserting a derivative claim on behalf of Blue Valley against the individual Defendants.[4]  It is undisputed that Wolinetz represented Blue Valley in other actions, including one which was not resolved until after this lawsuit was filed in Thayer County, Nebraska.   The court must now consider whether Wolinetz' previous representation of Blue Valley and his current representation of Kantner in this case poses an ethical concern warranting Wolinetz' disqualification.

In derivative actions, the corporation is named as a nominal defendant, but its interests may be more closely aligned with the plaintiff where the corporation stands to benefit from a successful suit.  See, e.g., In re Digimarc Corp. Derivative Litigation, 549 F.3d 1223, 1234 (9th Cir. 2008) (discussing alignment of parties in a derivative suit for the purposes of determining subject matter jurisdiction).   However, where the corporation's officers and directors are "antagonistic" to the interests of the shareholder plaintiff, the corporation is properly aligned as a defendant.  See In re Digimarc Corp., 549 F.3d at 1234-35; Liddy v. Urbank, 707 F.2d 1222, 1224 (11th Cir. 1983) ("[I]f management of the corporation is actively aligned against the plaintiff shareholder and

_____

[4] Although Plaintiffs seek to amend their complaint to specifically add a derivative action, their state court complaint sufficiently pled a derivative action.  See Trieweiler v. Sears, 268 Neb. 952, 689 N.W.2d 807 (2004) (discussing the requirements for pleading a derivative action in Nebraska state court actions).

17

his lawsuit, then the shareholder and the corporation are actually on opposing sides of the controversy, and the corporation is properly named as a defendant.").[5]

Here, Kantner is the majority shareholder and in control of Blue Valley, thus the management of Blue Valley is actively aligned against the minority shareholder Plaintiffs.  Case law supports the position that under such circumstances, the corporation is properly aligned as a defendant.  See In re Digimarc Corp., 549 F.3d at 1234-35. Therefore, Wolinetz' current representation of Kantner does not necessarily place him in a position where he is representing a party "directly adverse" to his former client, Blue Valley.

At this stage in the litigation, the court simply does not have enough evidence to find Wolinetz has a conflict of interest warranting his disqualification from this case.

2.      Wolinetz as a Witness.

Under Nebraska Rule of Professional Conduct § 3-503.7, a lawyer may not advocate at a trial in which he or she is likely to be a "necessary witness."  Under Nebraska law, a party seeking to call opposing counsel as a witness can prove his or her testimony is necessary by a showing that "(1) the proposed testimony is material and relevant to the determination of the issues being litigated and (2) the evidence is unobtainable elsewhere."  Beller v. Crow, 274 Neb. 603, 609, 742 N.W.2d 230, 235 (2007).  "In most jurisdictions, a lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage."  Droste v. Julien, 477 F.3d 1030, 1035 (8th Cir. 2007)(internal citation and quotation omitted).

---

[5] While the discussions regarding party alignment in the cited cases occurred in the context of the respective courts determining diversity jurisdiction, the principles are no less applicable in determining whether attorney Wolinetz has a conflict of interest. That is, Blue Valley's alignment in the case bears directly on whether Wolinetz' representation of Defendants is directly adverse to his former client – Blue Valley.

Disqualifying Wolinetz due to his status as a potential necessary witness would be premature.  The court is not convinced Wolinetz will be a "necessary" witness as defined by Nebraska law.  In addition, even if a showing is made that Wolinetz will be a necessary witness at trial, he is not precluded from representing Defendants in the pretrial stages of litigation.  See Turner, 823 F. Supp. 2d at 908.  Based on the evidence currently of record, Wolinetz is not subject to disqualification at this time.

C.    Discovery Matters

While the court was investigating and applying the nuances of personal jurisdiction, the timeliness and possible futility of adding another defendant and claim, the creation and extent of attorney-client relationships in a derivative action, and the potentially applicable attorney disqualification concepts, the parties' discovery attempts continued.  The defendants identified an expert and the plaintiffs moved to strike that expert, (Filing No. 84).  The defendants moved to stay discovery, (Filing No. 92), and the plaintiffs opposed that motion, (Filing No. 97), and moved to compel defendants' discovery responses, (Filing No. 104).  Then the defendants objected to the plaintiffs' notices to subpoena three banks, claiming discovery should be stayed.  (Filing Nos. 108, 109 & 110).

1.    Motion to Strike Defendants' Expert Identification.

Plaintiffs have moved to strike the defendants' disclosure of rebuttal expert William Strain. (Filing No. 84).  Strain was disclosed specifically to rebut the expert testimony of Plaintiffs' expert Bradley Larson.  Plaintiffs disclosed Larson as an expert on June 20, 2013.  Under Fed. R. Civ. P. 26(a)(2)(D)(ii), rebuttal experts must be

19

disclosed within 30 days after the opposing party's disclosure.[6]   Defendants did not disclose Strain until July 29, 2013 – more than 30 days after the disclosure of Larson. Under Rule 37 of the Federal Rules of Civil Procedure, a late disclosure will lead to exclusion of the evidence unless the failure to disclose was "substantially justified or is harmless."

In this case, Defendants apparent failure to timely disclose Strain as a rebuttal witness is harmless.  The trial is still a year away and the parties are in the midst of discovery.  Plaintiffs have suffered no prejudice due to the late disclosure.  Accordingly, the motion to strike is denied, as is Plaintiffs' request to sanction Defendants for the untimely disclosure.

2.      Motion to Compel.

The plaintiffs have moved to compel discovery responses, (Filing No. 104), arguing the defendants "objected to Requests for Production 1, 2, 8, 9, 12, 13 and 14 on the grounds that they seek information protected by the attorney client privilege and work product doctrine."  (Filing No. 105, at CM/ECF p. 2).  Plaintiffs claim the defendants' attorney-client and work product objections are frivolous and were waived by defendants' refusal to provide a privilege log.

The court has reviewed the plaintiffs' evidence filed in support of their motion to compel.  The defendants' discovery responses include attorney-client and work product objections to the following Requests for Production:  Filing Nos. 106-1, Requests 1 & 2; 106-2, Request 3; 106-3, Requests 1 & 2; 106-5, Requests 1, 2, 3 & 4; 106-6, Requests 1, 2, 3, 4, 5 & 6; and 106-7, Requests 1 & 2.  Upon review of the evidentiary record, the

---

[6] The parties agree that they did not otherwise designate an alternative schedule for the disclosure of rebuttal experts.

court cannot locate Requests for Production 8, 9, 12, 13 and 14 as referenced in the plaintiffs' brief.

There is, apparently, a communication or filing error:  The Requests cited in the brief were not found in the evidence of record, and there are attorney-client and work product objections of record that are not cited in the brief.  Under such circumstances, the court will not currently consider the plaintiffs' motion to compel.  The motion will therefore be denied without prejudice to re-filing with a corrected evidentiary record and/or brief.

3.      Motion to Stay and Objections to Subpoenas.

The defendants moved to stay discovery until this court ruled on the Motions to Amend and Motions to Disqualify.  Since those motions are ruled on by this memorandum and order, the motion to stay will be denied.

While the motion to stay was pending, the plaintiffs served notices of intent to subpoena three banks.  Defendants objected to the notices to serve subpoenas on Fifth Third Bank, Wells Fargo Bank, and JP Morgan-Chase Bank because "[u]ntil the court rules upon the Motion for Stay of Discovery, no Discovery should take place."  (Filing Nos. 108, 109 & 110).  Since the defendants' motion to stay discovery will now be denied, the defendants' subpoena objections will be overruled.

IT IS ORDERED:

1)      Plaintiffs' Motion to Amend, (Filing No. 79) is granted in part and denied in part.  Plaintiffs may amend their complaint except to the extent they seek to bring claims against attorney Barry H. Wolinetz.  The plaintiff's Fourth Amended Complaint shall be filed on or before October 11th, 2013.

2)      Plaintiffs' Motion to Amend, (Filing No. 74), is denied as moot.

3)      Plaintiffs' Motion to Disqualify Attorney Barry H. Wolinetz, (Filing No. 66), is denied.

4)      Defendants' Motion to Strike Plaintiffs' Reply Brief, (Filing No. 73), is denied.

5)      Defendants' Motion for Dismissal regarding Motion to Disqualify, (Filing No. 69), and the amended motion thereof, (Filing No. 70) are denied as moot.[7]

6)      Defendants' Motion to Stay, (Filing No. 92) is denied.

7)      Plaintiffs' Motion to Compel, (Filing No. 104), is denied without prejudice.

8)      Defendant's Objections to Notices of Intent to Serve Subpoenas, (Filing Nos. 108, 109 & 110), are overruled.

Dated this 3rd day of October, 2013.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

[7] Defendants' Motion for Dismissal was treated as its brief in opposition to Plaintiffs' motion to disqualify and not as a separate motion.

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.