IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THERESA MALONE, individually and as a derivative action on behalf of BLUE VALLEY FOODS, INC., a Nebraska Corporation, *et al.*,<br><br>                Plaintiffs,<br><br>vs.<br><br>DOUGLAS KANTNER, *et al.*,<br><br>                Defendants. | 4:12-CV-3190<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on three motions to dismiss plaintiffs' Fourth Amended Complaint (filing 115): a motion to dismiss portions of the operative complaint for failure to state a claim, filed by defendants Douglas Kantner and Kevin Rutter (filing 125); a motion to dismiss for lack of personal jurisdiction, filed by defendant Kantner Real Estate, LLC ("KRE") (filing 126); and a motion to dismiss for failure to state a claim filed by the remaining defendants (filing 150). For the reasons discussed below, Kantner and Rutter's motion will be granted in part and denied in part, KRE's motion will be granted, and the remaining defendants' motion will be denied.

### I. FACTUAL BACKGROUND

Plaintiffs in this diversity action are residents of Nebraska and minority shareholders in Blue Valley Foods, Inc. ("Blue Valley"), a Nebraska corporation that made cheese and other dairy products. Filing 115 at ¶ 1, 9–10. Kantner (a California resident) was a director, as well as the majority shareholder and president of Blue Valley. Filing 115 at ¶ 11. Kantner was the owner, either directly or indirectly, of the corporate defendants Kantner Group, Inc.; Kantner Ingredients, Inc.; Chianti Cheese Company of New Jersey, Inc.; Kantner Custom Dairy Products, LLC; and Kantner Real Estate, LLC (collectively, the "Kantner Companies"). Filing 115 at ¶ 12. The Kantner Companies are all incorporated and have their principal places of business in states other than Nebraska. Filing 115 at ¶¶ 2–8. According to plaintiffs, Kantner was responsible for directing the business operations of each of the Kantner Companies. Filing 115 at ¶ 13. Rutter was Kantner's employee, and

worked for the Kantner Companies and Blue Valley. At various times Rutter was the controller of Kantner Group and a director and comptroller of Blue Valley. Filing 115 at ¶ 14–15.

Briefly stated, plaintiffs allege that Kantner and Rutter "conspired to use their positions as officers and directors of [Blue Valley] to systematically loot" Blue Valley, through a variety of self-dealing transactions and fraudulent practices, and that Kantner and Rutter frustrated plaintiffs' attempts to monitor Kantner and Rutter's activities and to exercise their rights as minority shareholders. Filing 115 at ¶ 41 & pp. 2–19. For example, plaintiffs allege that Kantner purchased products for Blue Valley from the Kantner Companies for "exorbitant prices," then sold Blue Valley's products to those companies for below-market rates. Filing 115 at ¶¶ 18(f)–(g). Plaintiffs also allege that Kantner and Rutter used funds drawn from Blue Valley to satisfy personal obligations or debts incurred by the Kantner Companies. Filing 115 at ¶ 18(m). And plaintiffs claim that Kantner failed to hold shareholder meetings or elections and strenuously resisted their attempts to exercise any oversight. Filing 115 at ¶¶ 18(a)–(d), 78–81.

## II. STANDARD OF REVIEW
### A. FAILURE TO STATE A CLAIM - RULE 12(B)(6)

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id. at* 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common

sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

### B. LACK OF PERSONAL JURISDICTION - RULE 12(B)(2)

When jurisdiction is challenged on a pretrial motion to dismiss, the plaintiff need only make a prima facie showing of jurisdiction. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011); *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008). Nonetheless, if the defendant controverts or denies jurisdiction, the plaintiff still carries the burden of proof. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto. *Miller*, 528 F.3d at 1090; *Coen v. Coen*, 509 F.3d 900, 904–05 (8th Cir. 2007).

Neither party has requested an evidentiary hearing, and the Court does not consider a hearing necessary to resolve the pending motion. Where, as here, the Court does not hold an evidentiary hearing and instead relies on pleadings and affidavits, the Court must view the facts in the light most favorable to plaintiffs, and resolve all factual conflicts in plaintiffs' favor. *Pangaea*, 647 F.3d at 745.

### III. ANALYSIS

Plaintiffs' operative complaint asserts (approximately) eight theories of recovery. The majority are brought only against defendants Kantner and Rutter. Those theories are: (1) breach of fiduciary duty; (2) fraudulent misrepresentation and fraudulent concealment; (3) conversion; (4) breach of the duty of loyalty and fair dealing; (5) civil conspiracy; (6) money had and received (brought against all defendants but Rutter); and (7) usurpation of corporate opportunities (brought solely against Kantner). Plaintiffs assert their claims on their own behalf and as a derivative action on behalf of Blue Valley.

The Court will begin by briefly sorting through the defendants' motions to dismiss. Rutter has moved to dismiss plaintiffs' claims for money had and received and usurpation of corporate opportunities (filing 127 at 6–7). Plaintiffs have clarified that they did not intend to assert either of those claims against Rutter (filing 135 at 1), and so his motion to dismiss is granted in that respect.

- 3 -

Kantner and Rutter both move to dismiss plaintiffs' second and fifth claims, for fraudulent misrepresentation and concealment and for civil conspiracy. They also contend that plaintiffs have not satisfied the requirements for bringing a derivative action. In the alternative, Kantner and Rutter ask that plaintiffs be ordered to provide a more definite statement of their complaint, to clarify which claims are brought in their individual capacities and which are brought as derivative actions on behalf of Blue Valley. Filing 127 at 1. The Court finds that plaintiffs have failed to plead their fraud claims with the particularity required by Rule 9(b), and those claims will be dismissed, but with leave to replead. Kantner and Rutter's motion will otherwise be denied.

The Kantner Companies move to dismiss the sole claim against them, for money had and received, for failure to state a claim. Filing 150. The Court finds that plaintiffs have adequately pleaded this claim and will deny the Kantner Companies' motion.[1]

Finally, KRE separately moves to dismiss for lack of personal jurisdiction. Filing 126. On the present record, the Court finds that plaintiffs have not made a prima facie showing that KRE is subject to jurisdiction in Nebraska, and the Court will grant KRE's motion. However, it may be that plaintiffs can allege additional facts that would make the exercise of jurisdiction over KRE proper; thus, plaintiffs will be given leave to replead their claims against KRE.

### A. KANTNER AND RUTTER'S MOTION TO DISMISS
#### 1. Fraudulent Misrepresentation / Concealment

Kantner and Rutter raise several arguments in support of their motion to dismiss plaintiffs' fraud claims. They first argue that plaintiffs have failed to plead their claims with the particularity required by Fed. R. Civ. P. 9(b). Second and relatedly, Kantner and Rutter argue that plaintiffs have failed to plead the essential elements of intent and reliance. And finally, they argue that the claims are barred by the statute of limitations. The Court considers each argument in turn.

A plaintiff who makes allegations based on fraud must state with particularity the circumstances constituting the fraud. Fed. R. Civ. P. 9(b); *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012). The level of particularity required depends on the nature of a case. *Id.* This pleading requirement is interpreted in harmony with the principles of notice pleading, and to satisfy it, the complaint must allege such matters as the

---

[1] The Kantner Companies have also moved to dismiss the remaining claims for relief. However, none of those claims were asserted against the Kantner Companies.

time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). In other words, the complaint must plead the "who, what, where, when, and how" of the alleged fraud. *Id.*

Plaintiffs generally allege that Kantner and Rutter defrauded them and Blue Valley by failing to disclose various self-dealing transactions or misrepresenting the nature of those transactions. Filing 115 at ¶ 24. Plaintiffs then provide a number of examples of the alleged misrepresentations and non-disclosures. Filing 115 at ¶ 24(a)–(j). For instance, plaintiffs allege that Kantner and Rutter engaged in fraud by "failing to provide the Plaintiffs with required financial disclosures" and by "failing to disclose and misrepresenting the nature of transactions where [they] satisfied [their own] personal obligations . . . or obligations incurred by various Kantner companies with funds drawn from Blue Valley Foods." Filing 115 at ¶ 24(a)–(g).

With the possible exception of the "why" and "who" underlying their allegations, plaintiffs have not pleaded their fraud claims with the particularity that Rule 9(b) demands. The reason for the alleged misrepresentations and non-disclosures is obvious: if Kantner and Rutter were, in fact, engaged in a scheme to "loot" Blue Valley through various self-dealing transactions, then they would do their best to keep plaintiffs from learning the details. Whether plaintiffs have pleaded the "who" is less clear. They simply allege, in cursory fashion, that Kantner and Rutter both engaged in each of the listed examples of fraud.

But even if those matters had been pleaded in more detail, the remaining circumstances of the alleged fraud were not. Most notably, plaintiffs have not pleaded the timing of any of the alleged acts of fraud. And plaintiffs have only alleged the circumstances and contents of any alleged misrepresentations or concealments in the broadest terms. For example, plaintiffs allege that Kantner and Rutter "fail[ed] to disclose and misrepresent[ed] the nature of transactions where [they] charged [Blue Valley] exorbitant amounts for administrative expenses without consulting or obtaining the consent of the Plaintiffs." Filing 115 at ¶ 24(e). More detail is needed. The higher degree of notice required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to potentially damaging allegations. *Drobnak*, 561 F.3d at 783. If there was a misrepresentation, plaintiffs must more specifically allege its contents—or at least provide some specifics as to how the statement was false or misleading, or what information was omitted or concealed.

Plaintiffs have attempted to allege a systematic, ongoing pattern of fraudulent conduct that extended over a significant period of time. As such, they are not required to allege the specific details of every fraudulent act forming the basis of their complaint. *See U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006). But they must at least allege "*some* representative examples" of the alleged fraudulent conduct, specifying the time, place, and content of the acts and the identity of the actors. *Id.* Plaintiffs have not provided any, and have therefore failed to plead their fraud claims with the particularity required by Rule 9(b). Those claims will be dismissed. However, the plaintiffs may be able to provide the missing details, and so the Court will give them leave to replead.

Kantner and Rutter next assert that the fraud claims suffer from another fatal pleading defect: the lack of any allegations that Kantner and Rutter (1) intended plaintiffs to rely upon any alleged misrepresentations or concealed facts, and (2) that plaintiffs did, in fact, reasonably rely, and suffered damages as a result. Intent and reliance are essential elements of claims for fraudulent misrepresentation and fraudulent concealment. *See*, *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 791 N.W.2d 317, 334 (Neb. 2010); *Eicher v. Mid Am. Fin. Inv. Corp.*, 748 N.W.2d 1, 12 (Neb. 2008).

Plaintiffs do not explicitly allege that Kantner and Rutter engaged in fraudulent conduct with the intent to induce plaintiffs' reliance. *See* filing 115 at 5–7. However, "intent" and other states of mind may be alleged generally. Fed. R. Civ. P. 9(b). And it is apparent from plaintiffs' complaint that Kantner and Rutter's alleged misrepresentations and omissions were made with the intent to deceive plaintiffs into approving or simply not learning of defendants' alleged misconduct. Liberally construed, plaintiffs have adequately alleged intent.

The same cannot be said for the element of reliance. Plaintiffs allege only that "any misrepresentations relied upon by the Plaintiffs as to the nature of these transactions constitute fraudulent misrepresentation . . . ." Filing 115 at ¶ 25. This is rather non-specific phrasing—plaintiffs have not actually come forward and alleged that they did reasonably rely on any misrepresentations or omissions. More importantly, unlike intent, reliance must be pleaded with particularity. *See In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 321–22 (8th Cir. 1997); *see also Blood v. Givaudan Flavors Corp.*, 606 F. Supp. 2d 972, 987–88 (N.D. Iowa 2009). Plaintiffs must allege facts showing how they acted or refrained from acting in response to the alleged fraud, as well as facts suggesting this reliance was reasonable. They have not yet done so, and this presents another basis for dismissing their fraud claims. However, plaintiffs will be given an opportunity to replead their claims with greater particularity.

Finally, Kantner and Rutter assert that to the extent plaintiffs seek to rely upon certain alleged events occurring in 2004 and 2006, their fraud claims are barred by the statute of limitations. *See* Neb. Rev. Stat. § 25-207. This argument is without merit. The events in 2004 and 2006 that defendants refer to are only mentioned in a separate portion of plaintiffs' complaint, and do not appear to form part of their fraud claims. *See* filing 115 at 17. Second, the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and plaintiffs are not required to plead the lack of an affirmative defense. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009). Defendants' motion to dismiss under Rule 12(b)(6) is limited to matters contained in plaintiffs' complaint. *See* Fed. R. Civ. P. 12(d). And as noted above, plaintiffs' complaint does not state when any of the alleged fraud occurred. Thus, no statute of limitations bar is apparent from the face of the complaint. *See Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004).

### 2. Civil Conspiracy

Kantner and Rutter next move to dismiss plaintiffs' claim for civil conspiracy. A conspiracy is not a separate and independent tort in itself, but, rather, is dependent upon the existence of an underlying tort. *Hatcher v. Bellevue Volunteer Fire Dept.*, 628 N.W.2d 685, 696 (Neb. 2001). Without an underling tort, one cannot state a claim for conspiracy. *Id.* Kantner and Rutter assert that there is "no way to tell from the Plaintiffs' pleading which underlying tort they rely upon." Filing 127 at 5. But plaintiffs have clarified that it is their conversion and fraud claims which form the basis for their conspiracy claim. Filing 135 at 6. And although plaintiffs' fraud claims are out, for now, Kantner and Rutter do not dispute that plaintiffs have stated a claim for conversion. *See* filing 115 at ¶¶ 29–33; *see also* filing 53 at 22–23. Therefore, this portion of Kantner and Rutter's motion to dismiss is denied.

### 3. Derivative Action

Kantner and Rutter next argue that the complaint does not clearly specify which claims are brought by the plaintiffs in their individual capacities and which are being brought as part of a derivative action on behalf of Blue Valley. As a general rule, a shareholder may not bring an action in his or her own name to recover for wrongs done to the corporation or its property. *Trieweiler v. Sears*, 689 N.W.2d 807, 828, 836–37 (Neb. 2004). Such a cause of action belongs to the corporation and not the shareholders. *Id.* A shareholder may, however, enforce a cause of action belonging to the corporation by bringing a derivative suit on the corporation's behalf. *Id.* There is a well-recognized exception to the general rule: If the shareholder

- 7 -

properly establishes an individual cause of action because the harm to the corporation also damaged the shareholder in his or her individual capacity, rather than as a shareholder, such individual action may be maintained. *Id.*

The Court does not find the plaintiffs' complaint to be as confusing as Kantner and Rutter claim. The nature of several of plaintiffs' claims is immediately apparent. The seventh claim, for usurpation of corporate opportunities, is necessarily a derivative action. *See In re Digex Inc. Shareholders Litigation,* 789 A.2d 1176, 1189 (Del. Ch. 2000). The allegations supporting plaintiffs' sixth claim, for money had and received, are limited to money belonging to Blue Valley—thus, this claim is necessarily brought on behalf of Blue Valley. *See* filing 115 at ¶¶ 60–61. And plaintiffs' first, second, and fourth claims, for breach of fiduciary duty, fraud, and breach of the duty of loyalty and fair dealing, are explicitly pleaded as both individual and derivative claims. Each claim alleges that Kantner and Rutter owed a duty to both Blue Valley and the minority shareholders, and that Kantner and Rutter breached that duty.[2] *See* filing 115 at ¶¶ 17–19, 23–24, 35–37.

Only plaintiffs' conversion claim presents any difficulty. The allegations supporting this claim appear to be limited to property belonging to Blue Valley, such as funds belonging to Blue Valley. *See, e.g.*, filing 115 at ¶ 30(m). However, plaintiffs allege that both they and Blue Valley "have an ownership interest in said property." Filing 115 at ¶ 32. If this allegation is true, then the claim is brought in both individual and derivative capacities; if not, the claim is purely derivative. Kantner and Rutter have not presented any argument on this precise point, and the Court will not explore the matter further at this time. For now, it suffices to state that Kantner and Rutter cannot legitimately claim to be confused about the nature of plaintiffs' claims.

Kantner and Rutter next argue that plaintiffs' derivative claims must fail because plaintiffs have not satisfied the "demand" requirement. Normally, to maintain a derivative action, a shareholder must allege the making of a demand upon the corporation. *Kubik v. Kubik,* 683 N.W.2d 330, 335 (Neb. 2004); *see also* Fed. R. Civ. P. 23.1.[3] However, this requirement will be excused where a demand would have been futile. *Kubik,* 683 N.W.2d at

---

[2] Whether any or all of these claims may actually be brought as direct (individual) claims is a separate question, not raised by Kantner and Rutter, and therefore not before the Court at this time. Nor does the Court need to decide whether this case calls for application of the rule that a derivative claim may, in certain cases involving closely held corporations, be treated as a direct action for purposes of recovering damages. *See Trieweiler,* 689 N.W.2d at 837–38.

[3] Plaintiffs' complaint is based solely on Nebraska state law, and the Court examines Nebraska law to determine if the demand requirement of Rule 23.1 is satisfied. *See Cottrell v. Duke,* 737 F.3d 1238, 1247 (8th Cir. 2013).

336. The Court need not determine whether plaintiffs have properly pleaded a demand, as they have pleaded futility. Where directors of a corporation are accused of wrongdoing—as is the case here—the generally accepted rule is that it would be futile to request the same directors to sue themselves. *Id*. "One cannot seriously contend that [Kantner and Rutter] would have caused an action to be brought requiring that [they] account to the corporation." *Anderson v. Clemens Mobile Homes, Inc.*, 333 N.W.2d 900, 904 (Neb. 1983). Thus, the Court finds that plaintiffs have properly pleaded a derivative action, and this aspect of Kantner and Rutter's motion to dismiss is denied.

B. KANTNER COMPANIES' MOTION TO DISMISS

The plaintiffs' sole claim against the Kantner Companies is for money had and received. The Kantner Companies have moved to dismiss, arguing that plaintiffs have failed to state a claim for relief. The Court finds that plaintiffs have stated a claim, and the motion will be denied.

An action in assumpsit for money had and received may be brought where a party has received money which in equity and good conscience should be repaid to another. *In re Margaret Mastny Revocable Trust*, 794 N.W.2d 700, 711 (Neb. 2011). In such circumstances the law implies a promise on the part of the person who received the money to reimburse the payor in order to prevent unjust enrichment. *Id.* at 711–12. To state a claim, plaintiffs must allege that (1) defendants received money, (2) defendants retained possession of the money, and (3) defendants in justice and fairness ought to pay the money to plaintiffs.

Plaintiffs allege that from 2004 to 2009, Kantner ran Blue Valley and the Kantner Companies as "a joint business operation." Filing 115 at ¶ 58. And, they claim, Blue Valley and the Kantner Companies

> maintained bank accounts at Wells Fargo. The bank accounts included an operating line of credit that was used by all of the companies. This account system was set up in a manner such that all deposits for each company were made to that line of credit, regardless of which entity was receiving the funds. Transfers were made from the line of credit to the operating accounts for each entity's operating account to cover disbursements made by that entity. All deposits were used to pay off the line of credit, regardless of which entity was depositing the funds.

Filing 115 at ¶ 59. Plaintiffs further allege that as a result of this commingling of funds, Kantner and the Kantner Companies received and

retained money from Blue Valley that did not rightfully belong to them. Filing 115 at ¶¶ 60–61. In other words, plaintiffs allege that Kantner used this joint line of credit to improperly transfer money from Blue Valley to his other companies. Plaintiffs do not exactly state why this was improper, but a fair reading of the remainder of their complaint suggests that it was either because Kantner lacked the authority to do it in the first place, because it was a self-dealing transaction, or simply because it was not done in a good-faith effort to serve Blue Valley's interests.

The Kantner Companies first point out that any money from Blue Valley was actually received by Wells Fargo, and therefore, they argue, plaintiffs have failed to allege that they received or retained any money. This argument is not persuasive. If Blue Valley's funds were used to pay down the line of credit, then as a result, the Kantner Companies would have had access to additional credit. And, plaintiffs allege, the Kantner Companies did take advantage of that extra credit, and used it to pay their own expenses. That the benefit received was access to credit as opposed to a direct exchange of money is immaterial. A claim for money had and received is not limited to literal exchanges of money, but extends to money "or its equivalent." *In re Lisco's Estate*, 64 N.W.2d 310, 312 (Neb. 1954).

The Kantner Companies next contend that plaintiffs have failed to allege they were at fault for receiving the transfers, and thus equity does not demand repayment. Again, the Court is not persuaded. Plaintiffs have not alleged a situation where the Kantner Companies were the innocent recipients of Blue Valley's funds. Rather, they have alleged that Douglas Kantner was directly or indirectly the owner of all the Kantner Companies, and was responsible for directing their business operations. Filing 115 at ¶¶ 12–13. Thus, the Kantner Companies would necessarily have known how the funds were procured. If that procurement was wrongful, plaintiffs have stated a colorable claim for money had and received.

A claim for money had and received (while an action at law) is equitable in nature. *City of Scottsbluff v. Waste Connections of Nebraska, Inc.*, 809 N.W.2d 725, 743 (Neb. 2011). It is, in essence, a restitution claim for unjust enrichment. *Id.* So, plaintiffs must allege facts that the law of restitution would recognize as an unjust enrichment. This does not require that the decisional law must have recognized a specific fact pattern as unjust enrichment. *Id.* Unjust enrichment (and equity) are flexible concepts. *Id.*; *Trieweiler*, 689 N.W.2d at 835–836. Plaintiffs have alleged that the Kantner Companies were knowing participants in a scheme to wrongfully deprive Blue Valley of its funds. That strikes the Court as a situation, if proved, in which justice and fairness would demand repayment. Thus, the Kantner Companies' motion to dismiss is denied.

### C. KRE'S MOTION TO DISMISS

KRE is a limited liability company organized in Ohio, and its sole owner is Kantner, who is a California resident. Filing 34-1 at ¶ 2; filing 115 at ¶ 2. KRE argues that it is not subject to jurisdiction in Nebraska. As noted above, it is plaintiffs' burden to make a prima facie showing that jurisdiction over KRE is appropriate. *Miller*, 528 F.3d at 1090. On the current record, plaintiffs have not satisfied that burden.[4]

A federal court may exercise jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution. *Id*. Nebraska's long-arm statute confers jurisdiction to the fullest extent permitted by the United States Constitution, and so the inquiries are merged and the sole question becomes whether the exercise of personal jurisdiction would comport with due process. *See*, Neb. Rev. Stat. § 25-536(2); *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir. 2003).

For the exercise of jurisdiction over a defendant to comport with due process, the defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Pangaea*, 647 F.3d at 745. The fundamental inquiry is whether the defendant has purposefully availed itself of the benefits and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 594 (8th Cir. 2011). Purposeful availment is required to ensure that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person. *Stanton*, 340 F.3d at 693–94. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state. *Id*.

The minimum contacts necessary for due process may be the basis for either "general" or "specific" jurisdiction. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010). A court obtains general jurisdiction against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum. *Id*. Specific jurisdiction over a defendant is exercised when a state asserts personal jurisdiction over a nonresident defendant that

---

[4] Plaintiffs have verified their complaint; thus, they have not rested on the pleadings alone. *See* filing 115-1 through 115-5.

- 11 -

has purposefully directed its activities at the forum's residents in a suit that arises out of or relates to these activities.[5] *Id.*

The Eighth Circuit has set forth five factors to use in evaluating a defendant's contacts with a state: (1) the nature and quality of the contacts, (2) the quantity of those contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Id*. The third factor distinguishes whether the jurisdiction is general or specific. *Id*. The first three factors are primary factors, and the remaining two are secondary. *Id*. And a court is to look at all the factors in the aggregate and examine the totality of the circumstances in determining personal jurisdiction. *Id*.

KRE's contacts with Nebraska are far too limited to subject it to general jurisdiction in this state, and plaintiffs do not argue otherwise. Kantner has submitted a declaration averring that KRE has never (among other things) conducted any business in Nebraska, owned or leased any real or personal property in the state, been registered with Nebraska's Secretary of State, solicited business in the state, maintained an account at a Nebraska financial institution, or had any employee, agent, or representative that resided in Nebraska or who regularly worked on its behalf in Nebraska. Filing 34-1. KRE has had no business transactions with a Nebraska company with the exception of a single loan to Blue Valley that it made in 2007. Filing 34-1 at ¶ 8. Plaintiffs do not dispute any of these facts. Thus, KRE is not subject to general personal jurisdiction.

Plaintiffs argue that specific jurisdiction over KRE is appropriate, based upon KRE's alleged receipt of funds from the line of credit that it shared with Blue Valley and the other Kantner Companies. If true, these allegations show that KRE's conduct resulted in harm to a Nebraska corporation. And because KRE was owned by Blue Valley's president, KRE would necessarily have known that its conduct was causing harm in Nebraska. But that kind of foreseeability is not a sufficient benchmark for exercising personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

The necessary minimum contacts must be between the defendant and the forum state itself, not merely between the defendant and persons who

---

[5] The specific factors the courts consider when evaluating minimum contacts vary depending upon whether a claim arises in tort or contract. An action in assumpsit for money had and received is a quasi-contract claim for restitution; and restitution constitutes an independent basis for liability in common-law legal systems—comparable in this respect to a liability in contract or tort. *City of Scottsbluff*, 809 N.W.2d at 743. So, the Court has considered caselaw from both contexts. Under any formulation of the minimum contacts analysis, personal jurisdiction is lacking.

reside in that state. *Walden v. Fiore,* 134 S. Ct. 1115, 1122 (2014). In other words, the plaintiff cannot be the only link between the defendant and the forum. *Id.* On the current record, however, that is the only sort of connection that plaintiffs have shown between KRE and Nebraska. Plaintiffs' complaint leaves the Court with no clear understanding of the quality or quantity of KRE's contacts with Nebraska.[6] Plaintiffs have alleged only that Blue Valley and KRE shared a line of credit. They have not alleged any other contacts between them, let alone acts showing that KRE purposefully availed itself of the privilege of conducting business in Nebraska.

Jurisdiction may be asserted over defendants who have purposefully reached out beyond their state and into another by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum state. *Burger King,* 471 U.S. at 479–80. Plaintiffs, citing *VKGS, LLC v. Planet Bingo, LLC,* 828 N.W.2d 168 (Neb. 2013), and *Kugler Co. v. Growth Products Ltd., Inc.,* 658 N.W.2d 40 (Neb. 2003), argue that a similar relationship existed between KRE and Blue Valley. But *Planet Bingo* and *Kugler* undermine, rather than support, plaintiffs' argument. In both cases, non-Nebraska companies formed long-term commercial relationships that involved numerous transactions, communications, and meetings over the course of several years. *See*, *Planet Bingo,* 828 N.W.2d at 178; *Kugler,* 658 N.W.2d at 48. More importantly, the relationships in those cases had substantial connections to the State of Nebraska. *See Planet Bingo,* 828 N.W.2d at 178. Plaintiffs in this case have not alleged facts showing such a connection. Therefore, the Court finds that, on the current record, KRE is not subject to the jurisdiction in Nebraska. Accordingly,

IT IS ORDERED:

1. The motion to dismiss filed by defendants Kantner and Rutter (filing 125) is granted in part and denied in part, as set forth above. However, plaintiffs are given leave to replead their fraud claims.

2. The motion to dismiss filed by Kantner Real Estate (filing 126) is granted. As to defendant Kantner Real Estate, plaintiffs' operative complaint is dismissed without

---

[6] In their brief, plaintiffs assert for the first time that KRE took money from Blue Valley "on nearly a daily basis over the [c]ourse of at least five years." Filing 135 at 9. However, the Court declines to consider unsworn allegations raised only in the parties' brief. *See Henthorn v. Dep't of Navy,* 29 F.3d 682, 688 (D.C. Cir. 1994).

  prejudice. However, plaintiffs are also given leave to replead their claim against Kantner Real Estate.

3.  The Kantner Companies' motion to dismiss (filing 150) is denied.

4.  Plaintiffs shall file any amended complaint on or before July 14, 2014.

Dated this 23rd day of June, 2014.

         BY THE COURT:

         _____
         John M. Gerrard
         United States District Judge