IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THERESA MALONE, individually and as a derivative action on behalf of Blue Valley Foods, Inc., a Nebraska corporation, et. al;<br><br>Plaintiffs,<br><br>vs.<br><br>KANTNER INGREDIENTS, INC., et. al;<br><br>Defendants. | 4:12CV3190<br><br>MEMORANDUM AND ORDER |

The plaintiffs moved for an order to show cause and requested an expedited hearing on the matter. (Filing No. 222). The plaintiffs' motion states they requested production of "Sent and Received email from various Kantner employees as well as invoices related to the transactions between the Kantner companies and Blue Valley Foods, Inc.," but "Defendants refused to provide some, or in the case of the invoices, even most, of those documents." (Filing No. 223, at CM/ECF p. 1).

In support of their motion, the plaintiffs produced the affidavit of a computer forensic expert. (Filing No. 224-1). According to that affidavit, the plaintiff's expert reviewed imaging from the Defendants' two servers and an external hard drive, and he reached conclusions regarding the number of files on the servers and Defendants' use of pocketmirror software to sync/copy emails to another device. The defendants responded with the affidavit of their computer forensic expert. That affidavit avers the statements made by Plaintiffs' expert were either incomplete, incorrect, or only partially correct. (Filing No. 233-10). The court held an evidentiary hearing on the motion on March 20, 2015. For the reasons discussed below, the plaintiffs' motion will be denied.

ANALYSIS

Over the last two years, boxes and CDs of documents have been produced by the defendants; volumes of documents have been filed of record on the court's docket; and multiple conferences have been held with the court regarding the parties' discovery disputes. The case preparation effort of Plaintiffs' counsel has focused on requesting documents from the defendants.[1] (Filing No. 124-2, at CM/ECF p. 2). Defendants have produced documents from various sources, including electronic information located on a computer image of the data stored on Kantner's file servers. To date, the plaintiffs have filed five motions to compel additional documentation (Filing Nos. 104, 117, 139, 219, and 268); four have been ruled on, and the fifth—filed three days after the evidentiary hearing on Plaintiffs' motion to show cause—remains pending.

In October of 2014, Plaintiffs claimed the defendants failed to produce all documents responsive to Plaintiffs' discovery requests, particularly sent emails and invoices of transactions between Blue Valley Foods and the defendants. In an attempt to quell Plaintiffs' ongoing distrust of the Defendants' discovery efforts, the Defendants were ordered to:

- locate the Kantner Group servers and determine if the server imaging performed by the defendants at the outset of the case (and before Defendants' initial review and production of ESI) was a full and complete imaging.

---

[1] A receiver took control of Blue Valley Foods in early 2009. At the outset of this litigation, Plaintiffs' counsel was informed that the financial records of Blue Valley Foods were in the possession of the court-appointed receiver, MCA Financial Group. (Filing No. 183, at CM/ECF p. 26).

Approximately 50 boxes of Blue Valley Food's pre-liquidation business documents were stored in Wapakoneta, Ohio. At the direction of Plaintiffs' counsel, the documents were shipped to and stored in Omaha, and after conducting their review, Plaintiffs' counsel shipped the documents back to Ohio. Defendants do not know what was included in the boxes received from Ohio by Plaintiffs' counsel, and of those documents, what Plaintiffs' counsel copied before shipping the documents back to Ohio. (Filing No. 183, at CM/ECF pp. 7-8, 11, 19).

2

- Produce any invoices located on that the server, the names of those who have had access to it, and all metadata related to that server; and

- Produce the Sent Mail recovered from Defendants' servers and responsive to Plaintiffs' discovery.

(Filing No. 192).

Plaintiffs' pending motion to show cause alleges the defendants, their counsel, and counsel's paralegal failed to comply with this order, destroyed or tampered with evidence, and provided untruthful information to the court regarding the existence of discovery requested by the plaintiffs. Plaintiffs request an order requiring Defendants to reimburse Plaintiffs for the cost of work performed by Plaintiffs' forensic computer expert, and an order requiring Defendants and their attorneys to explain why they have failed to comply with the Court's order.

In response to my order, (Filing No. 192), in early October of 2014, defense counsel received servers[2] from defendant Kantner, including the exchange server used for email. Drew Thompson, a paralegal for defense counsel, reviewed the condition of the servers and confirmed that the data image from the shared server data received by defense counsel at the outset of the case matched the data set and data amount on that server. However, while defense counsel could turn on the exchange server and confirm that it was operational, he did not have the connector needed to access the exchange server data. The Kantner servers were therefore sent to Defendants' forensic expert, who fully imaged the servers and provided a full copy of that imaging to Plaintiffs' forensic expert.

---

[2] At the outset of the case, defense counsel received an image of the data on the Kantner servers. They did not receive the actual servers.

3

After receiving the server imaging, Plaintiffs' forensic expert performed a word search of the data and located some documents containing the words "Blue Valley" that were not previously disclosed by the defendants in an electronic format.[3] The plaintiffs presented evidence that some of those documents were responsive to production requests served by the plaintiffs, but they were not previously disclosed to the plaintiffs in an electronic format. See Filing No. 119-6, at CM/ECF pp. 5-6; Requests 1, 2, 4 & 6.

After receiving the actual servers, the defendants did not repeat their search of the server data for responsive discovery. The plaintiffs claim the defendants thereby violated the court's order. But the order required the defendants to determine if the server imaging performed by the defendants at the outset of the case was a full and complete imaging: It did not require the defendants to repeat their ESI review and production if the 2012 initial data imaging appeared to be full and complete. That is, the defendants were not required to repeat the work they had already done on the same data. Plaintiff's argument to the contrary misconstrues the intended meaning of my order.

By providing the full image of the servers to Plaintiffs' expert, the defendants produced the emails, invoices, and associated metadata as required under the court's order.[4] While the plaintiffs incurred expense for forensic review of that data, the plaintiffs' use of their own forensic expert was reasonable—and perhaps necessary—to bring some closure to the ongoing ESI discovery battle.[5]

---

[3] The defendants have also provided access to and copies of a substantial number of documents in paper.

[4] Disclosing the full server image to the plaintiffs actually exceeded the requirements of my written order, (Filing No. 192).

[5] At the close of the hearing, Plaintiffs' counsel stated that the parties did not discuss how to collect and produce ESI for this case at the outset. Had those discussion occurred, the court believes all parties' discovery costs would have been minimized. Under such circumstances, imposing some share of the discovery cost on the plaintiffs is reasonable.

The defendants allowed Plaintiffs to "see for themselves" whether any additional documentation was on the Kantner servers. And the court is convinced this was the only means of convincing Plaintiffs that they had received everything. Had the parties discussed how to collect, review and produce ESI at the outset, perhaps the cost of two experts, and other discovery-related fees and costs, could have been avoided. But those discussions never occurred. Based on the totality of these circumstances, including counsels' representations during prior conference calls with the undersigned magistrate judge, requiring the plaintiffs to pay their own expert's fees is a reasonable method for sharing the cost of ESI discovery for this case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978) (allowing the court to shift all or part of the costs of document production to the requesting party).

At most, the plaintiffs offered evidence of mistakes made during defense counsel's 2012 manual review of the electronic files.[6] Manual review is still considered by many as the "gold standard" for electronic document review. But human error is common when attorneys are tasked with personally reviewing voluminous electronically stored information. The Sedona Conference Best Practices Commentary on the Use of Search and Information Retrieval Methods in E-Discovery, Public Comment Version, 8 Sedona Conf. J. 189, 204 (August 2007).[7] The fact that defense counsel may have made mistakes does not warrant imposing sanctions—particularly where the plaintiffs now have full access to the server imaging. "The discovery standard is, after all, reasonableness, not

---

[6] A total of 661,422 documents and 557,194 emails were located on the Kantner servers. Upon review of that data, the defendants produced 140,000 electronic files, (Filing No. 233-10), including over 14,000 documents (e.g., Word documents, Excel spreadsheets, PDFs, etc.), and over 117,000 emails. (Filing Nos. 239-4, at CM/ECF p. 5, ¶ 16; 239-6).

[7] Predictive coding is now promoted (and gaining acceptance) as not only a more efficient and cost effective method of ESI review, but a more accurate one. Nicholas Barry, Man Versus Machine Review: The Showdown Between Hordes of Discovery Lawyers and A Computer-Utilizing Predictive-Coding Technology, 15 Vand. J. Ent. & Tech. L. 343 (2013); Maura R. Grossman & Gordon V. Cormack, Technology-Assisted Review in E-Discovery Can Be More Effective and More Efficient Than Exhaustive Manual Review, 17 Rich. J.L. & Tech. 11, P 5 (2011).

perfection." Id. See also Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 615 (C.D. Cal. 2013) ("The discovery process relies upon the good faith and professional obligations of counsel to reasonably and diligently search for and produce responsive documents. . . . However, while parties must impose a reasonable construction on discovery requests and conduct a reasonable search when responding to the requests, the Federal Rules do not demand perfection.") (collecting cases). "It is improper to infer nefarious intent or bad faith from what appear to be ordinary discovery errors." PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship, 187 F.3d 988, 993 (8th Cir. 1999).

The defendants and their counsel complied with the court's order, (Filing No. 192). Defendants' counsel and its paralegal did not provide misleading or untruthful information to the court. And the plaintiffs have presented no evidence, including through the testimony of their computer forensic expert, that Defendants, their counsel, or their counsel's paralegal destroyed, hid, or purposefully (or even recklessly) failed to produce responsive ESI.

Accordingly,

IT IS ORDERED that Plaintiffs' motion to show cause, (Filing No. 222), is denied.

March 31, 2015.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.