IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| THERESA MALONE, individually and as a derivative action on behalf of BLUE VALLEY FOODS, INC., a Nebraska corporation, et al., | 4:12-CV-3190 |
| Plaintiffs, | MEMORANDUM AND ORDER |
| vs. | |
| DOUGLAS KANTNER, et al., | |
| Defendants. | |

This matter is before the Court on three motions for summary judgment filed by plaintiffs (filing 257) and defendants (filings 282 and 291), as well as plaintiffs' Motion to Strike Index (filing 295), and defendants' Objections to Plaintiffs' Index of Evidence (filing 321). For the reasons discussed below, all of these motions are denied.

## I. BACKGROUND

### 1. BLUE VALLEY FOODS, INC. UNDER DOUGLAS KANTNER

Blue Valley Foods, Inc. ("Blue Valley") was a Nebraska corporation with a plant in Hebron, Nebraska, that produced imitation cheese and other cheese products. Filing 292 at 8. Defendant Douglas Kantner became a director of Blue Valley in 2002, and a majority shareholder in 2003. Filing 293-1 at 1. Kantner acted as CEO of Blue Valley, and had the "final say" on its business decisions. Filing 299-12 at 33. Defendant Kevin Rutter was also a director of Blue Valley at certain points in time, and acted as Blue Valley's controller at various times. *See*, filing 292 at 8; filing 301-12 at 182. In 2004 plaintiffs became minority shareholders in Blue Valley. *See, e.g.,* filing 301-10 at 19. The plaintiffs were also employees of Blue Valley at various times. Filing 292 at 8.

Kantner also owned Kantner Group, Inc., filing 299-12 at 21, a holding company that in turn owned Kantner Ingredients, Inc.; Chianti Cheese Company of New Jersey, Inc.; and Kantner Custom Dairy Products, LLC (collectively, the "Kantner Companies"). Filing 299-12 at 21, 91. Rutter was

also employed by Kantner Ingredients, Inc., and later by Kantner Group, Inc. Filing 301-12 at 11.

After Kantner became majority shareholder, he moved several of Blue Valley's business operations from Hebron, Nebraska, to Wapakoneta, Ohio, where the Kantner Companies had their headquarters. *See* filing 293-1 at ¶ 25. The Kantner Group provided various services for Blue Valley, and charged Blue Valley an administrative fee for those services. Filing 299-12 at 93–94.

Kantner also opened a line of credit for Blue Valley with Fifth Third Bank, which was secured with Blue Valley assets and was not cross-collateralized with the assets of the Kantner Companies. Filing 292 at 11. In 2008, Kantner moved this line of credit from Fifth Third Bank to Wells Fargo Bank; the parties disagree about the reasons for the move. *See,* filing 292 at 12; filing 300 at 8. This line of credit was cross-collateralized with the assets of other Kantner Companies. Filing 292 at 12.

During his tenure at Blue Valley, Kantner continued to participate in business activities related to the other Kantner companies. On some occasions, Blue Valley purchased from or sold to Kantner Companies. Filing 292 at 13. Blue Valley also transacted business with other companies. Filing 292 at 13.

In 2008, Kantner purchased through the Kantner Group a company called Custom Dairy Products, LLC, which he renamed Kantner Custom Dairy Products, LLC ("Custom Dairy"). *See* filing 293-1 at ¶ 3. This company produced shredded cheese. Filing 292 at 9. The purchase of Custom Dairy was funded in part by the assets of Custom Dairy itself, and in part by an over-advance on the Wells Fargo line of credit. Filing 299-12 at 54.

Blue Valley eventually experienced financial difficulties, for reasons that are disputed by the parties. *See,* filing 292 at 3; filing 300 at 4. In 2009, Blue Valley was placed into receivership, and its assets were liquidated. Filing 293-1 at ¶ 20.

## 2. PLAINTIFFS' ALLEGATIONS OF MISCONDUCT

The foregoing sequence of events is essentially undisputed. But other events alleged to have occurred during that time are highly contested, and often unclear from the present record.

After the plaintiffs became minority shareholders, they began to have concerns about Kantner's management of the company. In 2006, the plaintiffs retained attorney Rodney M. Confer to represent their interests as shareholders. Filing 284-1 at 3. Confer wrote a letter to Kantner on behalf of the plaintiffs, expressing "serious questions about Blue Valley's compliance with the Nebraska statutes and general corporate law since [Kantner] took

2

control in January 2004." Filing 284-1 at 3. The record does not indicate that anything happened as a result of that letter.

Eventually, the plaintiffs each individually filed suit, at different times in 2011. *See,* filing 299-1; filing 299-4; filing 299-5; filing 299-6; filing 299-7. The suits were joined on July 25, 2012. *See* filing 299-8. The plaintiffs allege that during discovery for this action, they learned that Kantner and Rutter had been mismanaging Blue Valley in breach of their fiduciary duties, and concealing this mismanagement from the plaintiffs. Filing 298 at 26. Briefly summarized, plaintiffs' allegations include that:

(1) Kantner and Rutter engaged in self-dealing by entering into transactions on behalf of Blue Valley with other Kantner Companies. Filing 175 at ¶¶ 17(e)–(g). The plaintiffs allege these transactions were unfair to Blue Valley, either because Blue Valley was required to pay more than was fair, because Blue Valley was forced to purchase inferior products, or because Blue Valley was required to sell its products for less than was fair. Filing 175 at ¶¶ 17(e)–(g).

(2) Kantner and Rutter charged Blue Valley exorbitant administrative fees. Filing 175 at ¶ 17(k). Additionally, plaintiffs contend that Kantner and Rutter charged Blue Valley administrative fees for their own personal expenses unrelated to services performed for Blue Valley. Filing 175 at ¶ 23(l).

(3) Kantner and Rutter cross-collateralized financial obligations using Blue Valley assets along with the assets of the Kantner Companies to secure credit for the benefit of the other Kantner Companies, or for Kantner and Rutter personally. Filing 175 at ¶ 63. The plaintiffs additionally claim that the Kantner Companies and Kantner have wrongfully retained possession of the money received as a result. Filing 175 at ¶ 64.

(4) Kantner usurped Blue Valley's corporate opportunity when he failed to obtain shareholder approval for his purchase of Custom Dairy. *See* filing 175 at ¶ 71.

(5) The liquidated assets of Blue Valley were improperly used to satisfy debts of Kantner, Rutter, and the Kantner Companies. Filing 175 at ¶ 34(o).

(6) Kantner and Rutter either misrepresented information about Blue Valley's financial status to plaintiffs or concealed such information when they had a fiduciary duty to disclose it. *See generally* filing 175 at ¶¶ 21–32.

(7) Kantner and Rutter failed to maintain and preserve corporate records appropriately. Filing 298 at 41.

(8) Kantner and Rutter wrongfully appropriated Blue Valley's funds, *see* filing 175 at ¶ 34, intellectual property, *see* filing 175 at ¶ 34(n), and cheese shredder, filing 300 at 74, for the benefit of themselves or the Kantner Companies.

3

(9) Kantner and Rutter employed various strategies to exclude plaintiffs from involvement in and knowledge of the operations of Blue Valley, including failing to hold shareholder meetings, refusing to provide plaintiffs with financial information, and failing to seek or obtain shareholder approval for many decisions affecting the operation of Blue Valley. *See generally* filing 175 at ¶ 17.

Three summary judgment motions are now before the court. First, plaintiffs have moved for partial summary judgment as to standing. Filing 257. Second, defendants move for summary judgment on the basis of the statute of limitations. Filing 282. Third, defendants move for summary judgment, or in the alternative, partial summary judgment, on the basis of several different arguments. Filing 291. The court denies all three motions for the reasons below.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The existence of a mere scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

4

### III. ANALYSIS

The plaintiffs' operative complaint asserts seven claims for relief, styled as: (1) breach of fiduciary duty, (2) fraudulent misrepresentation and concealment, (3) conversion, (4) breach of loyalty and fair dealing, (5) civil conspiracy, (6) money had and received, and (7) usurpation of corporate opportunity. *See generally* filing 175. However, the Court notes that civil conspiracy is not itself an independent claim for relief in Nebraska, but instead "serves to impose vicarious liability for the underlying tort of those who are a party to the conspiracy." *Koster v. P & P Enters.*, 539 N.W.2d 274, 278 (Neb. 1995). Additionally, as discussed in further detail below, the Court considers plaintiffs' claims for breach of loyalty and fair dealing and breach of fiduciary duty as a single cause of action. *See* filing 300 at 75. Therefore, in its analysis the Court considers the plaintiffs to be advancing five independent claims for relief: (1) breach of fiduciary duty, (2) fraudulent misrepresentation and concealment, (3) conversion, (4) money had and received, and (5) usurpation of corporate opportunity. And, as explained in the Court's Memorandum and Order of June 23, 2014, the fiduciary duty and fraud claims, as well as the conversion claim, are brought both as individual claims by the plaintiffs and derivative claims on behalf of Blue Valley.[1]

#### 1. Plaintiffs' Motion for Sanctions and Partial Summary Judgment

The plaintiffs seek partial summary judgment as to the defendants' affirmative defense of standing. Filing 258 at 25. In their answer to the operative complaint, defendants asserted that plaintiffs lacked standing to sue because they ceased to be shareholders when they agreed to sell their shares to the Kantner Group in 2008. Filing 177 at 6. The stock purchase agreement recited that the sale would be effected concurrently with the execution of the agreement, filing 259-1 at 1, but plaintiffs never transferred the shares, and the Kantner Group never paid the agreed price. *See* filing 299-12 at 161–62.

Plaintiffs argue that under the stock purchase agreement, the transfer of the shares would be effective only if the Kantner Group actually paid for the shares, and plaintiffs actually delivered the stock certificates. Filing 258

---

[1] For the sake of clarity, the Court notes that not all the claims are brought against all the defendants. For briefing and argument, the defendants have presented their claims jointly, so in this memorandum and order, the Court has not needed to distinguish between them, and has generally referred to "defendants'" arguments and potential liability. For purposes of trial, however, the Court understands the fiduciary duty, fraud, and conversion claims to be asserted against Kantner and Rutter, the money had and received claim to be asserted against Kantner and the Kantner Companies, and the corporate opportunity claim to be asserted only against Kantner.

at 15–16. Because neither event occurred, plaintiffs assert, plaintiffs never ceased to be shareholders and are entitled to summary judgment declaring that they have standing. *See* filing 258 at 16.

To begin with, the Court doubts that summary judgment is ever appropriate to affirm the standing of a plaintiff. Fed. R. of Civ. P. 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Standing is one requirement of subject-matter jurisdiction. Thus, if the Court determines a plaintiff lacks standing *at any time*, the Court must dismiss the action, regardless of any previously entered order to the contrary. To enter summary judgment affirming that a plaintiff has standing would have no real legal effect.

But more to the point, although the defendants contend that "there was and is evidentiary support" for their position that the stock purchase agreement destroyed standing, they have now abandoned that attack and do not plan to pursue it at trial. Filing 273 at 9–10. Consequently, the motion for summary judgment is denied as moot.

Plaintiffs have also moved for sanctions under Fed. R. of Civ. P. 11, 28 U.S.C. § 1927, and the inherent authority of the Court, arguing that defendants' original assertion of its standing defense was not supported by credible evidence. *See* filing 258 at 14. Plaintiffs also request sanctions on the basis of their allegations that defendants intentionally withheld various documents during discovery. *See* filing 258 at 18. Defendants counter with their own request for sanctions under Fed. R. of Civ. P. 37(a)(5)(A),[2] arguing that plaintiffs' motion to compel was not substantially justified. *See* filing 273 at 16. These motions are denied.

## 2. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (STATUTE OF LIMITATIONS)

Defendants move for summary judgment on all claims, arguing that they are all barred by the statute of limitations. Filing 282 at 1. As an initial matter, defendants set forth the relevant statutes of limitation for each claim. For the breach of fiduciary duty and fraud claims, defendants assert the statute of limitations is 4 years from the time of discovery. Filing 283 at 15. For all other claims, defendants assert the statute of limitations is 4 years from the time of the alleged wrongful act. *See* filing 283 at 18, 19, 20. Plaintiffs do not dispute that those are the applicable statutes of limitation. And the facts underlying plaintiffs' claims for relief span from 2004 to 2009, but the plaintiffs filed suit no earlier than May 20, 2011.

---

[2] Defendants cite to Fed. R. Civ. P. 37(a)(4)(A), but the relevant proposition is found at Fed. R. Civ. P. 37(a)(5)(A) under the current version of the Federal Rules.

Defendants assert that all of the plaintiffs' claims are time-barred. Defendants seem to be operating on the belief that where the plaintiffs have neither alleged nor presented evidence of the date on which an allegedly-unlawful act occurred, then the statute of limitations bars the claim. But a statute of limitations is an affirmative defense, and it is a defendant's burden to initially raise that defense and ultimately prove that a particular claim accrued outside the statutory period. *See Lindner v. Kindig*, 826 N.W.2d 868, 874 (Neb. 2013). Only then is the plaintiff burdened with presenting some basis for tolling the limitations period. *Id.*

So, where the time of an event is uncertain, there is at least a factual question with respect to when a claim based on the event accrued, and it is the defendant's initial burden to show that the claim is time-barred. *Id.* But, that said, it is undisputed that at least some of the events underlying the plaintiffs' claims occurred more than 4 years before the plaintiffs' operative complaint was filed. Thus, it is important to first determine when the applicable filing date is for the plaintiffs' claims.

(a) <u>Applicable filing dates</u>

This case was filed on May 20, 2011. But the defendants contend that the relevant filing date of the complaint is July 25, 2012, because according to the defendants, the operative complaint does not relate back to the original complaint. Filing 283 at 14.

Each plaintiff individually sued Kantner, Rutter, and Kantner Group, Inc. at different times in 2011. Filing 299-1; filing 299-4; filing 299-5; filing 299-6; filing 299-7. These claims were consolidated on July 25, 2012, in the plaintiffs' Third Amended Complaint. Filing 299-8. Additionally, on July 25, 2012, plaintiffs added defendants Kantner Ingredients, Inc., Chianti Cheese Co. of New Jersey, Inc., and Kantner Custom Dairy Products, LLC.[3] *See* filing 299-8. The Third Amended Complaint also added causes of action for civil conspiracy, money had and received, and usurpation of corporate opportunity. *See* filing 299-8.

Defendants argue that under Nebraska's relation-back statute, the applicable filing date for all claims is July 25, 2012, because plaintiffs added new parties at that time. Filing 283 at 13–14. But the defendants' argument is correct only as to Kantner Ingredients, Inc., Chianti Cheese Co. of New Jersey, Inc., and Kantner Custom Dairy Products, LLC.

Nebraska's relation-back statute states:

---

[3] Plaintiffs also joined other defendants on July 25, 2012, but they are no longer parties to this case.

7

(1) An amendment of a pleading that does not change the party or the name of the party against whom the claim is asserted relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

(2) If the amendment changes the party or the name of the party against whom a claim is asserted, the amendment relates back to the date of the original pleading if (a) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, and (b) within the period provided for commencing an action the party against whom the claim is asserted by the amended pleading (i) received notice of the action such that the party will not be prejudiced in maintaining a defense on the merits and (ii) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Neb. Rev. Stat. § 25-201.02.

In essence, if a plaintiff asserts a claim against a defendant, and then modifies that defendant's name, the filing date of the modification can "relate back" to the original filing date. *See id.* However, as defendants correctly note, the relation-back statute applies only in circumstances where the plaintiff changes the party or the name of the party against whom the claim is asserted, not where the plaintiff has added an entirely new party. *Gibbs Cattle Co. v. Bixler*, 831 N.W.2d 696, 708 (Neb. 2013). In cases where a plaintiff adds a new party, the applicable filing date as to the new party is the date of its addition. *Id.*

Defendants are incorrect, however, in their belief that adding new parties to a complaint has any effect on the applicable filing date for those defendants who have been party to a case from its inception. The plain text of the statute allows for an amendment to a complaint to relate back to the date of the original pleading if it meets certain requirements. *See § 25-201.02.* However, if the amendment does not meet those requirements, the statute does not require that the un-amended portions of the original pleading relate *forward* to the date of the amendment. Rather, the result is simply that that filing date of the amendment itself will not relate back.

The fact that the plaintiffs' individual suits were not joined until July 25, 2012 does not change this analysis. Section 25-201.02 has two sub-

8

sections. Subsection (2) applies only when "the amendment changes the party or name of the party *against whom a claim is asserted*." § 25-201.02(2) (emphasis added). Otherwise, the Court must apply subsection (1), under which an amendment adding plaintiffs to a complaint may relate back if it arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *See* § 25-201.02(1). Here, although each plaintiff initially filed a separate complaint, the allegations in each complaint were identical. Thus, the consolidation relates back to the filing date of the original complaint: May 20, 2011.

In sum, the July 25, 2012 filing date is effective only for defendants Kantner Ingredients, Inc., Chianti Cheese Co. of New Jersey, Inc., and Kantner Custom Dairy Products, LLC. The May 20, 2011 filing date still applies to defendants Kantner, Rutter, and Kantner Group, Inc.[4]

(b) Effect of the 2006 letter

Next, defendants argue that the plaintiffs' claims are time-barred because they had discovered the facts underlying each of their claims by the time they hired Confer to write a letter to Kantner for them in 2006. *See, e.g.,* filing 283 at 21. Plaintiffs counter that although they had general concerns regarding the management of Blue Valley in 2006, they knew nothing that would put them on notice of their instant claims against defendants. Filing 298 at 27.

Under Nebraska law, the statute of limitations for a fraud claim begins to run at the time of discovery of the fraud. Neb. Rev. Stat. § 25-207. The statute of limitations for a claim *not* based on fraud generally begins running at the time of the underlying wrong. *Alston v. Hormel Foods Corp.*, 730 N.W.2d 376, 381 (Neb. 2007). However, the statute of limitations for non-fraud claims may be tolled under the doctrine of fraudulent concealment. *Andres v. McNeil Co.*, 707 N.W.2d 777, 787 (Neb. 2005). Under this doctrine, if the plaintiff shows that "the defendant has, either by deception or by a violation of a duty, concealed from the plaintiff material facts which prevent the plaintiff from discovering the misconduct," the statute of limitations is tolled until the time plaintiffs discover those material facts. *Id.* (internal alterations omitted) (quoting *Schendt v. Dewey*, 568 N.W.2d 210, 213 (Neb. 1997)). For both fraud and non-fraud cases, discovery "occurs when one knows of the existence of an inquiry or damage and not when he or she has a legal right to seek redress in court." *See*, *Andres, 707 N.W.2d at 786*;

---

[4] The Court does not understand the defendants to be arguing that the relevant filing date is different for different claims for relief in the complaint.

*Kalkowski v. Neb. Nat'l Trails Museum Found., Inc.*, 826 N.W.2d 589, 597 (Neb. Ct. App. 2013).

Here, plaintiffs have testified in their depositions that they did not discover defendants' alleged wrongs until the commencement of discovery proceedings in this action. *See, e.g.*, filing 301-5 at 28–29; filing 301-6 at 89; filing 301-8 at 187; filing 301-10 at 129. And nothing in the 2006 letter directly contradicts that testimony: the letter expressed concern about corporate management but made no specific accusations that would prove the plaintiffs knew about the allegations upon which their claims are based. If credited, the plaintiffs' evidence creates a genuine issue of material fact with respect to when plaintiffs discovered the facts underlying their claims for relief. The Court will resolve these questions in its role as fact-finder at trial.

(c) <u>Continuing Tort Doctrine</u>

Defendants move in the alternative for summary judgment declaring that plaintiffs are barred from recovering damages caused by acts occurring outside of the statutory period. Filing 283 at 20–21. Specifically, they seek a declaration that the plaintiffs are barred from recovering damages caused by acts allegedly occurring prior to July 25, 2008. Filing 283 at 21. Nebraska courts have endorsed the "modified" continuing tort doctrine, which holds that a "claim for damages caused by a continuing tort can be maintained [only] for injuries caused by conduct occurring within the statutory limitations period." *Alston*, 730 N.W.2d at 383. Put simply, the fact that a tort is a continuing tort does not operate to toll the statute of limitations until the last act of the continuing tort.

Here, as the Court previously stated, no entire claim for relief is barred on its face by the statute of limitations. However, within these claims, plaintiffs allege certain acts that do fall outside the ostensible statute of limitations. *See, e.g.*, filing 175 at ¶ 23(i). In some cases, they allege continuing torts that continue from a time ostensibly outside of the statutory period to a time ostensibly within it. *See, e.g.*, filing 175 at ¶¶ 23(a)–(m). To recover damages stemming from the occurrence of those acts ostensibly outside of the statutory period, plaintiffs will bear the burden of proving at trial they are not time-barred. *See Lindner*, 826 N.W.2d at 874.

Here, as with defendants' general motion for summary judgment on the basis of the statute of limitations, there remain genuine issues of material fact. Plaintiffs have presented evidence that they did not discover the facts underlying their claims for relief until discovery proceedings in this case. *See, e.g.*, filing 301-5 at 28–29; filing 301-6 at 89; filing 301-8 at 187; filing 301-10 at 129. If credited, this evidence creates a genuine issue of material fact with

10

respect to when plaintiffs discovered the facts underlying their claims for relief. The Court will resolve these questions in its role as fact-finder at trial.

### 3. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

#### (a) Summary judgment is denied for Rutter

Defendants argue that defendant Rutter is entitled to summary judgment because the plaintiffs' depositions establish that none of them have personal knowledge that Rutter has committed wrongdoing, and because "not one admissible fact" establishes that Rutter has committed wrongdoing. Filing 292 at 16–17.

In Nebraska, a director can be held liable for a breach of fiduciary duty both when he affirmatively commits wrongdoing or fraud, and when he is merely negligent. *Trieweiler v. Sears*, 689 N.W.2d 807, 831 (Neb. 2004). Directors have a duty to "have a general knowledge of the manner in which the corporate business is conducted." *Id.* A director's neglect of that duty "creates the same liability as actual knowledge and failure to act on that knowledge." *Id.*

In this case, there is little genuine dispute that several of the acts plaintiffs allege to be wrongful actually occurred. For instance, as the factual background above summarizes, Blue Valley paid administrative fees to the Kantner Group and sold product to other Kantner Companies. The question is primarily whether those acts were wrongful, not whether they happened. Additionally, plaintiffs have presented evidence that, if credited, demonstrates that Rutter, as director and controller, was involved in some of those acts. *See, e.g.*, 301-12 at 69. Thus, plaintiffs have provided evidence from which the trier of fact could reasonably conclude Rutter breached his fiduciary duties.

Furthermore, even if Rutter personally took no affirmative acts in breach of his fiduciary duty—as defendants assert—that fact alone will not excuse him from liability as a matter of law. Because Nebraska recognizes negligent breach of fiduciary duty, plaintiffs are not required to demonstrate that Rutter affirmatively committed fraud or wrongdoing in breach of his fiduciary duty. *See Trieweiler*, 689 N.W.2d at 831. So, defendants' contention that Rutter is entitled to summary judgment on the grounds that he personally committed no wrongful act is unavailing. Summary judgment for Rutter is denied.

#### (b) Summary judgment is denied with respect to the civil conspiracy claim

Defendants Kantner and Rutter argue that they are entitled to summary judgment on the plaintiffs' civil conspiracy claim because, they

contend, plaintiffs have not produced any evidence establishing an express or implied agreement. Filing 292 at 17.

In Nebraska, civil conspiracy is "a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means." *Wiekhorst Bros. Excavating & Equip. Co. v. Ludewig*, 529 N.W.2d 33, 39 (Neb. 1995). Civil conspiracy is not an independent claim for relief, but "serves to impose vicarious liability for the underlying tort of those who are a party to the conspiracy." *Koster*, 539 N.W.2d at 278. Civil conspiracy need not be proven "by direct evidence of the acts charged, but may, and generally must, be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purpose to be accomplished." *Davidson v. Simmons*, 280 N.W.2d 645, 648 (Neb. 1979).

As discussed above, there is little genuine dispute that many of the business decisions plaintiffs complain of actually occurred. Rather, the primary question of the lawsuit is whether those decisions were wrongful. Additionally, there can be little dispute that, as directors, Rutter and Kantner were at times jointly involved in making those business decisions for Blue Valley. *See, e.g.*, filing 301-12 at 108–09. Thus, plaintiffs have produced evidence from which the trier of fact could reasonably conclude the defendants acted jointly to commit wrongful acts. Summary judgment on the claim of civil conspiracy is denied.

(c) <u>Summary judgment is denied with respect to claims relating to administrative fees</u>

Defendants argue that they are entitled to summary judgment on all claims based on allegations that administrative fees were improper. Filing 292 at 18. First, defendants contend that plaintiffs have no evidence that administrative fees were improper. Filing 292 at 19. Second, defendants assert that they are immune under Nebraska's business judgment rule from claims relating to the setting of administrative fees because they relied on an accountant's advice in setting the fees. Filing 292 at 20.

*(i) A genuine issue of material fact exists with regards to whether administrative fees were improper*

Defendants first contend that plaintiffs cannot meet their burden of demonstrating that the administrative fees Kantner Group charged Blue Valley were improper. Filing 292 at 19. But the defendants have the burden to prove the administrative fee was fair.

Neb. Rev. Stat. § 21-20,113 provides that where a director has a conflicting interest in a corporation's transactions, it may be enjoined or give

rise to a damages award unless (a) the director has properly obtained board approval pursuant to Neb. Rev. Stat. § 21-20,114, (b) the director has obtained shareholder approval pursuant to Neb. Rev. Stat. § 21-20,115, or (c) the "transaction, judged according to the circumstances at the time of commitment, is established to have been fair to the corporation." Where a defendant director has entered into a conflicting-interest transaction, the burden of proof is on the defendant to demonstrate that one of these three conditions is met. *Trieweiler*, 689 N.W.2d at 831.

In this case, the directors of Blue Valley agreed to pay an administrative fee to a company that Kantner owned and Rutter was employed by. This is clearly a conflicting-interest transaction. Thus, defendants bear the burden of showing that they either obtained proper board approval, that they obtained proper shareholder approval, or that the transaction was fair to the corporation. Defendants have not established as a matter of law that the administrative fees met one of those conditions. Therefore, summary judgment on the grounds that plaintiffs cannot meet their burden of production with respect to the impropriety of the administrative fees is denied.

### (ii) The business judgment rule does not as a matter of law immunize directors for all activities taken in reliance on advice of accountants

Defendants next argue that, regardless of the propriety of the administrative fees, they are immune from liability under Neb. Rev. Stat. § 21-2095, commonly known as the business judgment rule. Filing 292 at 20–21. Defendants contend that the statute immunizes them because they relied on the advice of an accountant in setting administrative fees. Filing 292 at 20–21. This argument misconstrues the statute.

Nebraska's business judgment rule provides that a director shall discharge his or her duties as a director in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner he or she reasonably believes to be in the best interests of the corporation. § 21-2095(1). And "[i]n discharging his or her duties, a director shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, if prepared or presented by . . . [l]egal counsel, public accountants, or other persons as to matters the director reasonably believes are within the person's professional or expert competence[.]" § 21-2095(2). But a director shall not be considered to be acting in good faith if he or she has knowledge that makes such reliance unwarranted. § 21-2095(3).

A director is not liable for any action taken as a director, or any failure to take any action, if he or she performed the duties of his or her office in

13

compliance with the business judgment rule. § 21-2095(4). But once a plaintiff has produced evidence that a director breached some fiduciary duty, the burden shifts to the defendant to demonstrate that he acted in accordance with the requirements of the business judgment rule. *Sadler v. Jorad*, 680 NW.2d 165, 171 (Neb. 2004).

Defendants argue that relying on their accountant's advice is sufficient to trigger the protections of this rule, because they were entitled to rely on the accountant's professional competence. Filing 292 at 20–21. But the statute clearly provides that a director is not protected from liability if he otherwise acts in bad faith, negligently, or in a manner he does not reasonably believe is in the best interests of the corporation. *See* § 21-2095(4). And in this case, plaintiffs have produced evidence that, if credited, creates a genuine issue of material fact with respect to whether Kantner and Rutter acted in bad faith, negligently, or without reasonable belief their actions would be in the best interests of the corporation. *See,* filing 301-4 at 109–110; filing 301-19 at 62–64. Therefore, defendants have not demonstrated as a matter of law that they are entitled to protection under the business judgment rule.

### (d) Summary judgment is denied with respect to claims based on lack of shareholder meetings, or lack of corporate documents or records

Defendants argue that they are entitled to summary judgment with respect to all claims based on a lack of shareholder meetings or a lack of corporate documents or records. Filing 292 at 21. They contend that Nebraska law provides statutory remedies to shareholders when a corporation fails to hold shareholder meetings or disclose corporate records, and that those remedies do not include awards of damages. Filing 292 at 23. They argue that where a statute creates a right and provides for a remedy for violations of that right, the right cannot be vindicated in any manner other than what the statute provides. Filing 292 at 23–24. Thus, defendants assert that plaintiffs are precluded from seeking damages in this case with respect to those claims. Filing 292 at 24.

Defendants are correct that as a general rule, where a statute creates a right and provides for a specific remedy, the right can be vindicated only in the manner provided by the statute. *Peterson v. Minden Beef Co.*, 434 N.W.2d 681, 683 (Neb. 1989). With respect to lack of shareholder meetings, defendants point to Neb. Rev. Stat. § 21-2053, which allows a state district court to summarily order a shareholder meeting on application of a shareholder if an annual meeting has not been held within either 6 months after the end of the corporation's fiscal year, or 15 months after the last annual meeting. Filing 292 at 23. With respect to the lack of corporate

14

documents, defendants point to Neb. Rev. Stat. § 21-20,185, which allows a state district court to order a corporation to allow shareholders to inspect and copy certain corporate records. Filing 292 at 23.

In this case, plaintiffs concede, and it is evident to the Court, that plaintiffs do not seek damages as a result of lack of shareholder meetings or corporate records *per se*. *See* filing 300 at 4–5. Rather, plaintiffs include these allegations to show how they say defendants concealed the alleged wrongdoing that plaintiffs now ask the Court to remedy. Filing 300 at 4–5. In other words, plaintiffs' claims for relief are based on the underlying facts that were allegedly concealed, not directly on the lack of shareholder meetings and corporate records that allegedly aided the defendants in concealing them.

The statutes that defendants cite provide remedies only for a lack of shareholder meetings or lack of corporate records. They do not provide remedies for additional tort claims just because the commission of the torts was facilitated by a lack of shareholder meetings or corporate records. Summary judgment for all claims on the basis of lack of shareholder meetings and corporate records is denied.

(e) Summary judgment is denied with respect to fraud claims

Defendants assert that they should be entitled to summary judgment on plaintiffs' fraud claim on the basis that plaintiffs have not shown reliance on defendants' alleged fraudulent misrepresentations and concealment. Filing 292 at 29. In the alternative, defendants argue that even if plaintiffs have relied to their detriment on the alleged misrepresentations and concealment, this reliance was unreasonable. Filing 292 at 28.

Defendants argue that plaintiffs did not rely on any alleged misrepresentation or concealment because their reliance ended when they began to consult with Confer in 2006. Filing 292 at 28–29. Defendants contend that if plaintiffs hired an attorney, they must have been relying on his advice, and not any statements of defendants.[5] Filing 292 at 29. This argument is difficult to square: it would amount to immunizing a defendant from claims of fraud as soon as the plaintiff retained counsel. A corporate investor is entitled to simultaneously rely upon both the advice of counsel and the representations of corporate directors, and a corporate director may still be liable for fraudulently misrepresenting or concealing the facts.

---

[5] The Court does have some questions as to what extent the plaintiffs' fraud claim is a separate claim of relief. Instead, the alleged misrepresentations and concealment seem most relevant to plaintiffs' argument that the statute of limitations should be tolled until the time they discovered the alleged wrongdoing of the defendants. Whether plaintiffs prove the existence of any damages flowing directly from the alleged concealment or misrepresentation is a matter the Court will take up at trial.

Whether that happened in this case, and whether the plaintiffs' reliance upon the defendants was reasonable, is a matter for the plaintiffs to prove at trial.

### (f) Summary judgment is denied with respect to claims for damages caused by the liquidation of Blue Valley

Defendants assert they are entitled to summary judgment on plaintiffs' claims for damages allegedly caused by Blue Valley's liquidation. Filing 292 at 29. They contend plaintiffs cannot produce evidence showing liquidation was not caused by factors outside of Kantner and Rutter's control. Filing 292 at 29.

It is true that plaintiffs bear the burden of proving defendants caused their damages. But contrary to defendants' arguments, plaintiffs need not disprove every hypothetical scenario in which some factor other than the defendants' actions might have caused their damages. Here, plaintiffs have produced evidence from which the trier of fact could reasonably conclude the defendants were a cause of Blue Valley's liquidation. *See, e.g.*, filing 301-4 at 7–8. The Court will resolve these questions in its role as fact-finder at trial.

### (g) Summary judgment is denied with respect to claims based on the way in which defendants operated Blue Valley

Defendants argue they are entitled to summary judgment on all claims "related to the way that Mr. Kantner operated" Blue Valley, specifically the claims that they moved Blue Valley operations to Ohio and operated Blue Valley as a subsidiary of the Kantner Group. Filing 292 at 33. Defendants contend that they are immune from liability under § 21-2095, Nebraska's business judgment rule. Filing 292 at 34. As previously discussed, to invoke the protection of the business judgment rule, a defendant director has the burden to prove that his actions were taken in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner he reasonably believes to be in the best interests of the corporation. § 21-2095(1).

Defendants have not demonstrated as a matter of law that they fulfilled the requirements of the business judgment rule. General assertions that Kantner and Rutter did "everything [they] could to resolve the problems" are inadequate to prove that they acted in accordance with the business judgment rule every single time they made a business decision. *See* filing 292 at 35. Furthermore, plaintiffs have produced evidence that, if credited, creates a genuine issue of material fact with respect to whether Kantner and Rutter, at certain times, acted in bad faith, negligently, or without reasonable belief their actions would be in the best interests of the corporation. *See,* filing 301-4 at 109–110; filing 301-19 at 62–64. Summary judgment with

respect to all claims based on the way in which defendants operated Blue Valley is denied.

(h) Summary judgment is denied with respect to the usurpation of corporate opportunity claim

Defendants argue they are entitled to summary judgment on the claim that they usurped corporate opportunities from Blue Valley. Filing 292 at 36. They contend that because each of the Kantner Companies produced different products and sold to different customers, none of the Kantner Companies could have usurped Blue Valley's corporate opportunities. Filing 292 at 37. In particular, defendants assert that acquiring Custom Dairy was not a corporate opportunity for Blue Valley because Custom Dairy produced shredded cheese, while Blue Valley produced imitation block cheese. Filing 292 at 37.

Nebraska law prohibits a director from usurping a business opportunity that rightfully belongs to the corporation. *See Trieweiler*, 689 N.W.2d at 843. An opportunity is corporate where it is "one of practical advantage to the corporation and fits into and furthers an established corporate policy." *Id.* at 844. Here, plaintiffs have produced evidence which, if credited, creates a genuine issue of material fact with respect to whether Custom Dairy was Blue Valley's corporate opportunity. *See, e.g.*, filing 299-12 at 54, 59. The difference between block and shredded cheese is not so self-evident that the Court can say, as a matter of law, that a shredded cheese business was not a corporate opportunity for an imitation block cheese company. So, the Court will resolve these questions in its role as fact-finder at trial. Summary judgment is denied with respect to the usurpation of corporate opportunity claim.

(i) Summary Judgment is denied with respect to all claims relating to intercompany transactions between Kantner Companies and Blue Valley

Defendants argue that they are entitled to summary judgment on all claims based on transactions between Blue Valley and the Kantner Companies. Filing 292 at 40. They contend that because plaintiffs personally have no knowledge of any unfair transactions, they cannot meet their burden of producing evidence to support their claims. Filing 292 at 40.

As previously discussed, where a director has a conflicting interest in a corporation's transactions, it may give rise to a damages award unless the director has properly obtained board approval, the director has properly obtained shareholder approval, or the transaction, is established to have been fair to the corporation. Neb. Rev. Stat. § 21-20,113. Where a defendant director has entered into a conflicting-interest transaction, the burden of

17

proof is on the defendant to demonstrate his actions met one of these three conditions. *Trieweiler*, 689 N.W.2d at 831.

Here, defendants have not produced evidence that establishes as a matter of law that they fulfilled one of the conditions of § 21-20,113. Furthermore, plaintiffs have produced evidence that, if credited, creates a genuine issue of fact as to whether these transactions were fair. *See, e.g.*, filing 301-4 at 109–110. Summary judgment is therefore denied with respect to all claims relating to transactions between Blue Valley and Kantner Companies.

(j) <u>Summary judgment is denied with respect to claims of breach of fiduciary duty</u>

Defendants argue that Kantner and Rutter are entitled to summary judgment with respect to all claims that they breached their fiduciary duties. Filing 292 at 41. They assert that they complied in all respects with the Nebraska business judgment rule, and therefore cannot be held liable for any alleged breach. Filing 292 at 41–42.

As previously explained, general assertions that Kantner and Rutter made efforts to help Blue Valley succeed is insufficient to establish that they acted in accordance with the business judgment rule every single time they made business decisions. As the Court has noted, plaintiffs have produced evidence that, if credited, creates a material issue of fact with respect to whether Kantner and Rutter acted in good faith, with due care, and in the best interests of the corporation. *See,* filing 301-4 at 109–110; filing 301-19 at 62–64. Summary judgment as to claims relating to breach of fiduciary duty is denied.

(k) <u>Summary judgment is denied with respect to conversion and money had and received</u>

*(i) Summary judgment is denied with respect to the conversion claim*

Defendants argue that Kantner and Rutter are entitled to summary judgment on the plaintiffs' claim for conversion because plaintiffs have not produced evidence that any identifiable property was converted. Filing 292 at 42. Plaintiffs contend Kantner and Rutter converted various items of "property." This property falls into three categories: Blue Valley funds allegedly converted as a result of Kantner and Rutter's breaches of fiduciary duty; Blue Valley's liquidated assets, which plaintiffs allegedly had a right to; and Blue Valley's cheese shredder.[6] The Court finds that the defendants are

---

[6] Plaintiffs have evidently abandoned their earlier allegation that Kantner and Rutter converted Blue Valley's intellectual property. In any event, this claim would not survive

correct on at least some points, but that the plaintiffs have enough evidence to support a finding that at least some property may have been converted.

In Nebraska, conversion is "any distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with that person's rights." *Zimmerman*, 585 N.W.2d at 451. For property to be subject to conversion, the plaintiff "must establish a right to immediate possession of the property at the time of the alleged conversion." *Id.* Money may be the subject of conversion where it is earmarked or specially designated, *State v. Omaha Natl' Bank*, 81 N.W. 319, 321–22 (Neb. 1899), or where the defendant wrongfully obtained it from the plaintiff, *Ochs v. Makousky*, 547 N.W.2d 136, 139 (Neb. 1996). Nebraska has not recognized a conversion claim meant to enforce a mere obligation to pay money generally. *See In re Wal-Mart Wage & Hour Employment Practices*, 490 F. Supp. 2d 1091, 1113–14 (D. Nev. 2007).

First, plaintiffs allege that Kantner and Rutter converted Blue Valley funds by disposing of them in breach of their fiduciary duties. Among the funds alleged to be converted are: funds allegedly lost as a result of Kantner and Rutter's self-dealing transactions; funds allegedly lost as a result of excessive administrative fees; and funds that Kantner and Rutter allegedly pledged as collateral to Wells Fargo to purchase Custom Dairy. *See,* filing 175 ¶ 34; filing 300 at 74.

None of these funds constitute "property" subject to conversion under Nebraska law. Plaintiffs have not produced evidence showing these funds were held separately from the fungible money Kantner and Rutter managed on behalf of Blue Valley. Nor have plaintiffs produced evidence that Kantner and Rutter obtained these funds wrongfully; only that they *used* them wrongfully. To conclude that these funds are subject to conversion would be to greatly expand the doctrine; virtually every tort could be characterized as conversion if it resulted in money damages. Plaintiffs may, of course, continue to seek damages resulting from the underlying alleged breaches of fiduciary duty.

Second, plaintiffs allege Kantner and Rutter converted Blue Valley's liquidated assets by using them to satisfy their own personal debts, as well as the debts of the Kantner Companies, instead of distributing them to shareholders. *See,* filing 175 ¶ 34; filing 300 at 74. These funds are likewise

---

summary judgment. Even if Kantner did use Blue Valley's name, logo, or other intellectual property, he did not deprive plaintiffs of their use of the same property. "[T]he essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property." *Zimmerman v. FirsTier Bank, N.A.*, 585 N.W.2d 445, 452 (Neb. 1998); *see ACI Worldwide Corp. v. MasterCard Techs., LLC*, 2014 WL 7409750, at *8–9 (D. Neb. Dec. 31, 2014); *see also Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1039 (D. Minn. 2013).

not "property" subject to conversion. Conversion enforces a plaintiff's property rights over specific personal property. It is not a mechanism to enforce a general obligation to pay the plaintiff some amount of fungible money. *See In re Wal-Mart*, 490 F. Supp. 2d at 1113–14. Again, plaintiffs may continue to seek damages resulting from defendants' alleged wrongful conduct.

Finally, plaintiffs allege that Kantner and Rutter converted Blue Valley's cheese shredder. Plaintiffs have produced evidence that, if credited, suggests that Blue Valley's cheese shredder ended up in the possession of Custom Dairy. *See, e.g.*, filing 299-25. It is unclear from the evidence how exactly that transfer came to be and, as a result, it remains possible that the shredder—Blue Valley's property—was taken without authority and given to another. Such evidence would support a conversion claim; the Court will take up that claim at trial. And because there is a genuine issue of material fact as to at least some of the property the plaintiffs contend was converted, summary judgment with respect to their conversion claim is denied.[7]

*(ii) Summary judgment is denied with respect to the money had and received claim*

Defendants contend that defendants are entitled to summary judgment on the claim for money had and received. Filing 292 at 43. They argue that plaintiffs have neither pled nor proven that defendants wrongfully received money. Filing 292 at 43. But plaintiffs' pleadings do allege that defendants wrongfully received Blue Valley funds: they claim Blue Valley assets were used to pay a line of credit that all Kantner Companies shared, and that defendants wrongfully acquired money through that line of credit. Filing 175 ¶ 63–65. Plaintiffs have also produced evidence that, if credited, creates a genuine issue of fact with respect to these allegations. *See, e.g.*, filing 301-7 at 8. Summary judgment is denied on the claim of money had and received.

(l) <u>Summary judgment is denied with respect to the claim of breach of duty of loyalty and fair dealing</u>

Defendants assert they are entitled to summary judgment with respect to breach of the duty of loyalty and fair dealing. Filing 292 at 43. Defendants argue that Nebraska law does not recognize breach of the duty of loyalty and fair dealing as an independent cause of action. Filing 292 at 43. Rather, defendants argue that Nebraska law treats claims of this sort as a subset of breach of fiduciary duty claims. Filing 292 at 44.

---

[7] Of course, in attempting to prove their claim at trial, the parties should be mindful of the propositions and conclusions set forth in this order.

20

A cause of action is defined as the set of facts that allegedly entitles a plaintiff to relief. *Poppert v. Dicke*, 747 N.W.2d 629, 633 (Neb. 2008). A plaintiff may ordinarily plead multiple theories of recovery for the same cause of action. *See Kenyon v. Larsen*, 286 N.W.2d 759, 762 (Neb. 1980). However, a plaintiff may not recover damages more than once for a given cause of action. *Vowers & Sons, Inc. v. Strasheim*, 576 N.W.2d 817, 825 (Neb. 1998).

It is unclear whether Nebraska law recognizes breach of duty of loyalty and fair dealing as a theory of recovery separate from breach of fiduciary duty.[8] In any event, plaintiffs support both theories with the same set of facts, and do not object to consolidating their claims. *See* filing 300 at 75–76. Thus, the Court will construe the plaintiffs' claims for breach of fiduciary duty and breach of duty of loyalty and fair dealing as a single cause of action at trial.

## 4. EVIDENTIARY CHALLENGES

### (a) Plaintiffs' motion to strike William Strain's declaration is denied

Plaintiffs move to strike the declaration of William Strain, defendants' expert witness, for alleged noncompliance with Fed. R. Civ. P. 26(a)(2)(B)(i). Filing 296 at 2. The Court did not rely on Strain's declaration in reaching its conclusion with respect to summary judgment. Accordingly the motion to strike is denied as moot.

### (b) Defendants' objections to plaintiffs' index of evidence is overruled

Defendants ask the Court not to consider a variety of evidence the plaintiffs have offered to oppose defendants' summary judgment motions. Filing 321 at 5. Defendants divide plaintiffs' evidence into three categories: deposition transcripts, the plaintiffs' expert's report, and documents that plaintiffs' attorney asserts he acquired during discovery.

Defendants object to the deposition transcripts on the grounds that the testimony "is hearsay, is speculative, and not based on personal knowledge." Filing 321 at 4. The Court considers this objection under Fed. R. Civ. P. 56(c).[9] The standard at the summary judgment stage is not whether the

---

[8] In *Poppert*, plaintiffs alleged breaches of multiple fiduciary duties, stating a separate "cause of action" for each specific fiduciary duty allegedly breached. The court treated them collectively as one cause of action, under multiple theories of recovery. Poppert, 747 N.W.2d at 633.

[9] The only federal rule defendants specifically mention is an outdated version of Fed. R. Civ. P. 56(e), which no longer contains the proposition that defendants assert. *See* filing 321 at 3.

evidence offered would be admissible at trial, "it is whether it *could* be presented at trial in an admissible form." *See,* Fed. R. Civ. P. 56(c)(2); *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). Here, defendants have not attempted to argue that the information in the deposition transcripts could not be presented in admissible form at trial. Thus, defendants' objection as to the deposition transcripts is overruled. *See Gannon*, 684 F.3d at 793.

Defendants object to the plaintiffs' expert report on two grounds. First, defendants argue the report is "hearsay, is lacking in any foundation, and is based on speculation." Filing 321 at 4. This argument lacks merit for the reasons described above. Second, defendants contend the report is unsworn and unauthenticated. Filing 321 at 4. But after Fed. R. Civ. P. 56 was amended in 2010, submission of unauthenticated documents in support of or opposition to a summary judgment motion no longer violates it *per se. See Foreword Magazine, Inc. v. OverDrive, Inc.*, 2011 WL 5169384, at *2 (W.D. Mich. 2011). Instead, the proper objection to unauthenticated evidence is that it cannot be authenticated, and therefore cannot be presented in admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2); *see also Foreword Magazine*, at *2. Defendants have not attempted to argue that plaintiffs will be unable to authenticate the expert report at trial. Thus, defendants' objection as to the expert report is overruled.

Defendants object to the remaining documents in plaintiffs' index of evidence because "the only Affidavit or Declaration is that of the Plaintiffs' lawyer claiming he found those documents in discovery." Filing 321 at 5. They allege that this affidavit is insufficient to authenticate the documents. Filing 321 at 5. This argument is without merit.[10] As explained above, a party may object to unauthenticated evidence if it believes the evidence cannot be presented in admissible, authenticated form. Here, defendants have not attempted to assert that plaintiffs could not authenticate the documents cited. Therefore, the defendants' objections to the plaintiffs' index of evidence are overruled.

---

[10] Defendants misconstrue the court's holding in *White v. Smith*, 808 F. Supp. 2d 1174 (D. Neb. 2011). That case does not stand for the proposition that an attorney's affidavit can never be used to authenticate documents received in discovery. Rather, it states that a party authenticating an exhibit must prove a rational basis for their claim that the item is what the party purports it to be. *Id.* at 1180–81. The plaintiff's attorney did not meet that burden in *White. Id.* at 1881. Here, however, the Court has reviewed plaintiffs' attorney's affidavit and concludes that plaintiffs' counsel was competent to authenticate the documents at issue.

IT IS ORDERED:

1.      The plaintiffs' motion for summary judgment (filing 257) is denied.

2.      Plaintiffs' (filing 257) and defendants' (filing 273) motions for sanctions in connection with plaintiffs' motion for summary judgment are denied.

3.      The defendants' motions for summary judgment (filings 282 and 291) are denied.

4.      The plaintiffs' motion to strike (filing 295) is denied.

5.      The defendants' objections to plaintiffs' index of evidence (filing 321) are overruled.

Dated this 2nd day of September, 2015.

BY THE COURT:

John M. Gerrard